# IN THE COURT OF APPEALS OF IOWA

No. 13-2005
Filed October 15, 2014

IN RE THE MARRIAGE OF ANGELA ELAINE LYMAN
AND TRENT ALAN LYMAN

Upon the Petition of
ANGELA ELAINE LYMAN, n/k/a
ANGELA ELAINE BODHOLDT,
    Petitioner-Appellee,

And Concerning
TRENT ALAN LYMAN,
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Wright County, Gregg R. Rosenbladt, Judge.

A father appeals the court's refusal to grant his petition to modify the physical care provisions of the dissolution decree. **AFFIRMED.**

Kimberley K. Baer and Maureen C. Cosgrove of the Baer Law Office, Des Moines, for appellant.

Mark D. Fisher of Nidey, Erdahl, Tindal & Fisher, P.L.C., and Monty Fisher, Fort Dodge, for appellee.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

Trent Lyman appeals the district court's refusal to modify the physical care provisions of the dissolution decree. He asserts the court should have granted him physical care of the parties' three children as he contends he proved a substantial change in circumstances has occurred and he can provide superior care. He also appeals the district court's decision to modify the provisions of the decree addressing child support, uncovered medical expenses, and tax exemption. He claims the difference in the support obligation did not vary by ten percent or more, making a modification of those provisions improper. For the reasons stated below, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

Trent Lyman and Angela Lyman, n/k/a Angela Bodholdt, were divorced in April 2006. They have three children: twin boys, who were thirteen at the time of the modification hearing, and a daughter, who was ten years old. The dissolution decree provided for Angela to have physical care with visitation to Trent.[1]

Since the dissolution, both Trent and Angela have remarried. Trent's wife Genell has three children, who are close in age to the children at issue here and the children reside primarily with Genell and Trent. Angela and her husband Mike have no other children.

Both Trent and Angela continue to live in the same town. Angela completed the education that was contemplated at the time of the dissolution decree and now works a weekend shift, every other weekend, as a radiology

---

[1] That decree was affirmed by this court. *In re Marriage of Lyman,* No. 06-0921, 2007 WL 1485207 (Iowa Ct. App. May 23, 2007).

technician. Trent is a veterinary research scientist and continues to work for the same employer as he did at the time of the dissolution decree, though his working hours have changed slightly.

The children are doing well in school and are highly involved in extracurricular activities with no behavioral issues. They are in good health, though the twins have sought medical attention for nocturnal enuresis. The parents have had disagreements on the correct treatment for this condition.

Trent filed the current modification action in July 2012, seeking physical care of the three children. He asserted Angela's temper has been escalating over time establishing a substantial change in circumstances justifying placing the physical care of the children with him. Trial was conducted in October 2013.

The court heard testimony from the twins, who expressed a desire to live with their father. They described that their mother would scream and yell at them. One of the boys described his mother as "crazy" and "hurtful." They also described incidents of physical aggression with their mother, but none of the incidents would qualify as physical abuse.[2]

They also described a recent incident where they decided to "run away" from their mother's house to their father's house. The boys left their mother a note and called their father as they walked to their father's house. Trent had

---

[2] There was one reported child abuse assessment involving one of the twins and Angela. The assessment was initially classified as confirmed but not placed on the abuse registry. However, after an agency appeal, the parties reached a settlement, the assessment was changed to "not confirmed," and the case was dismissed. While this appeal was concluded after the modification action, pursuant to an order of our supreme court, we take judicial notice of the agency order implementing the settlement agreement and dismissing the appeal.

Genell pick them up as they walked down the road and take them to his home. Angela called law enforcement to intervene, but the boys refused to go home. The boys eventually returned to Angela's house the following day. One of the twins "ran away" to his father's house a short time later after an altercation with Angela. The police became involved again, and the child returned to Angela's home the next day after school.

In contrast, the twins describe their father as reasonable and not showing anger. However, all the children have been witness to, and been embarrassed by, verbal exchanges between the parents, particularly between Genell and Angela. These verbal exchanges have occurred at the children's extracurricular activities and at a physician's office. In addition, a multitude of emails, text messages, and voicemail messages were submitted into evidence in this case and showed the parties, particularly Angela and Genell, have a great deal of difficulty working through daily issues such as medical appointments, visitation adjustments, clothing exchanges, and extracurricular involvement.

In addition to hearing from the parties and their spouses, the court also heard testimony from those who work with Angela, Angela's friends and acquaintances, and the law enforcement personnel who were involved when the twins ran away. No other person indicated they had observed Angela have any anger or temper issues.

The court also accepted the deposition testimony and report of Dr. Carroll Roland, who evaluated the children and Trent's parenting skills. Dr. Roland did not perform a custody evaluation or make a recommendation as to which party

should have physical care. Dr. Roland did note the twins stated a preference to live with their father and the daughter wanted equal time with both parents. The testing administered to the children indicated their father as the "parent of choice." While the children reported to him "anger episodes" involving Angela, Dr. Roland did not get any evidence from the children that he felt rose to the level of physical abuse requiring him, as a mandatory reporter, to contact the department of human services. There was also no indication that the children were coached or encouraged by Trent to act out when at Angela's home.

The court issued its decision in November 2013, denying Trent's request to grant him physical care. The court found the twins to be mature and articulate for their age. While the parents have a tense and competitive relationship, the court found their testimony truthful. The court found them to be competent, capable parents who were very involved with and concerned about their children's lives and activities. The court gave the child protection assessment little to no weight, concluding Angela was not intentionally abusive toward the children. The incidents introduced by Trent to show Angela's anger problems were not persuasive to the court. "While Angela may be more temperamental and emotional than Trent, when compared to the average person, her behaviors are certainly normal and no cause for concern." Looking at the evidence as a whole, the court concluded Trent failed to meet his burden to prove a substantial change in circumstances to justify a modification of the physical care arrangement.

However, Angela proposed increased visitation for Trent, and the court concluded the proposed schedule was fair, reasonable, and in the best interests of the children. Thus, it increased Trent's visitation to twelve overnights a month and alternating weekly visitation in the summer. This qualified Trent for the extraordinary visitation credit on the child support. The court modified the child support amount, decreasing it from $1039.00 to $957.24 per month considering the credit and Angela's current income.[3] The court also modified the percent division of uncovered medical expenses for the children in proportion to their current incomes.[4] The court later clarified the visitation schedule in a nunc pro tunc order and also ordered Trent to pay $2000 of Angela's trial attorney fees based on the parties' financial status.

Trent appeals claiming he had proven a substantial change in circumstances, justifying a change in the physical care, and that the court should not have modified the support obligations in this case.

## II. Scope and Standard of Review.

We review the district court's decision on a petition to modify a dissolution decree de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the credibility findings of the district court, but we are not bound by them. *Id.*

---

[3] Angela did not have income at the time of the dissolution decree due to her schooling.
[4] The prior decree provided Trent was to cover 100% of the uncovered medical expenses after the first $250 per child was paid by Angela. Under the modified decree, the parties share the uncovered medical expenses after the first $250 with Angela paying twenty-six percent and Trent paying seventy-four percent.

**III. Physical Care.**

Iowa courts will modify the physical care provisions of a dissolution decree only when the party seeking the change has established a substantial change in circumstances since the decree that was not contemplated by the court when the decree was entered, that is more or less permanent, and relates to the welfare of the child. *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). This is a heavy burden to carry because once custody has been established, it should be disturbed for only the most cogent reasons. *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980). In addition to proving the substantial change in circumstances, the petitioning parent must also show the ability to offer superior care. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002).

The original decree in this case noted that there was some evidence Angela had a "temper problem." However, the court noted there was evidence offered to rebut this allegation and that there was insufficient evidence to convince the court that Angela's temper was a "significant issue." In fact, on the appeal from the original decree we found the record showed "Angela has a temper problem," but agreed with the trial court's credibility and factual findings that, based on the entire record, Angela should remain the physical caretaker *In re Marriage of Lyman,* No. 06-0921, 2007 WL 1485207 (Iowa Ct. App. May 23, 2007).

In this proceeding, Trent maintains Angela's anger issues are "escalating." However, there is no indication in the record what "evidence" was offered at the

dissolution trial of Angela's temper problem or what was offered to rebut the allegation. So we have no way to know whether the behavior was "escalating." The district court observed that Angela was more animated during her testimony than Trent, leading the court to understand why the children think Angela is less calm than Trent. The court concluded Trent did not satisfy the burden to prove a substantial change in circumstances. The allegations made at the modification hearing once again failed to convince the district court that Angela should not have physical care in this case. Upon our review of the testimony and evidence in this case, we agree. There is clear animosity between Genell and Angela, but we conclude this too falls short of satisfying the burden to prove a substantial change in circumstances to warrant a modification of physical care.

Trent also challenges the court's failure to give more weight to the preferences of the children in this case to live with him as demonstrated by their testimony, the testimony of Dr. Roland, and the actions of the twins in running away from Angela's home. While the twins are certainly of an age and maturity level that their opinion on where they should live is a factor the courts will consider, the preference of a child in a modification action is given less weight than the preference given in an initial custody decision. *See In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000). The other factors Trent cites in support of the modification action—his modified work schedule, the location of his house in relation to the children's school, and the children's relationship with Genell's children—all fall short, independently or collectively with the other factors, to prove a substantial change in circumstances.

The district court found the children are in good health, all do well in school, have no behavioral problems at school, and are involved in appropriate extracurricular activities which are supported by all four parental figures. We emphasize that one seeking to modify custody must carry a heavier burden of proof than is required in an initial custody determination because once custody has been established it should be disturbed for only the most cogent reasons. *Mikelson*, 299 N.W.2d at 671. We find there are no cogent reasons to disturb the current custodial arrangement and agree with the district court that there is a lack of proof of a substantial change in circumstances. Accordingly, we need not address whether Trent proved he could provide superior care.

As the burden to justify modifying the visitation schedule is lower than the burden to modify the physical care provision, the court was justified in modifying the visitation in this case to increase Trent's time with the children. *See Brown*, 778 N.W.2d at 51 (noting the "different, less demanding burden" applicable to actions seeking to modify the visitation provisions in a dissolution decree—the parent must establish a "*material change in circumstances*" making the modification of visitation in the best interests of the children). The children clearly desire more time with their father, and Angela conceded at trial that additional time with Trent was in the children's best interests. We agree with the court's refusal to modify the physical care provision of the dissolution decree and agree with its decision to increase Trent's visitation.

## IV.  Child Support.

Next, Trent claims on appeal the district court should not have modified the dissolution decree provisions governing child support, uncovered medical expenses, and tax exemptions.  He claims that in order to modify these provisions there must first be a ten percent increase or decrease in the amount of support under the child support guidelines.  He cites Iowa Code section 598.21C(2)(a) (2011) for this proposition.  Because the new support amount ($957.24) did not deviate by ten percent from the prior support amount ($1039.00) he claims any modification of the support, uncovered medical expenses, or tax exemptions was improper.

In order to modify child support, there must be a "substantial change in circumstances."  *In re Marriage of Mihm*, 842 N.W.2d 378, 381 (Iowa 2014) (citing Iowa Code § 598.21C).  Section 598.21C provides, in part:

> 1. Criteria for modification.  Subject to 28 U.S.C. § 1738B, the court may subsequently modify child, spousal, or medical support orders when there is a substantial change in circumstances.  In determining whether there is a substantial change in circumstances, the court shall consider the following:
>       a. Changes in the employment, earning capacity, income, or resources of a party.
>       b. Receipt by a party of an inheritance, pension, or other gift.
>       c. Changes in the medical expenses of a party.
>       d. Changes in the number or needs of dependents of a party.
>       e. Changes in the physical, mental, or emotional health of a party.
>       f. Changes in the residence of a party.
>       g. Remarriage of a party.
>       h. Possible support of a party by another person.
>       i. Changes in the physical, emotional, or educational needs of a child whose support is governed by the order.
>       j. Contempt by a party of existing orders of court.

k. Entry of a dispositional or permanency order in juvenile court pursuant to chapter 232 placing custody or physical care of a child with a party who is obligated to pay support for a child. Any filing fees or court costs for a modification filed or ordered pursuant to this paragraph are waived.

l. Other factors the court determines to be relevant in an individual case.

Subsection 2 of Iowa Code section 598.21C provides, in part:

2. Additional criteria for modification of child support orders.

a. Subject to 28 U.S.C. § 1738B, but *notwithstanding subsection 1*, a substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines established pursuant to section 598.21B

(Emphasis added.)   Subsection 1 articulates the various factors the court is to consider in determining whether a substantial change in circumstances exists to modify the child support.  Subsection 2 provides that, notwithstanding subsection 1, a substantial change in circumstances will exist if there is a ten percent variation in the amount of support due under the current guidelines.  We interpret these two subsections together to conclude a ten percent variation is not mandatory for a substantial change in circumstances to exist, but it is certainly sufficient by itself.  To interpret these code sections as Trent contends—a ten percent variation is always required to modify child support—would render subsection 1 meaningless.  *See In re Estate of Melby*, 841 N.W.2d 867, 879 (Iowa 2014) ("When construing statutes, we assess not just isolated words and phrases, but statutes in their entirety, and we avoid constructions rendering parts of a statute redundant, irrelevant, or absurd.").  We reject such an interpretation and conclude that the district court was justified in modifying the child support, uncovered medical expenses, and tax exemption provisions despite the lack of a

ten percent variation so long as a substantial change in circumstances existed under section 598.21C(1). *See Mihm*, 842 N.W.2d at 385 (noting modification can be based on "an evaluation of changed circumstances or the ten percent deviation").

Here, Angela claims on appeal a substantial change in circumstances did exist to justify the modification in light of both parties' remarriages (section 598.21C(1)(g)), her employment which she did not have at the time of the dissolution decree (section 598.21C(1)(a)), and the addition of Genell's three children into Trent's household (section 598.21C(1)(d)). She also claims the children's extracurricular expenses have substantially increased since the dissolution decree (section 598.21C(1)(d)).

In his initial brief, Trent did not challenge the conclusion that a substantial change in circumstances existed in this case.[5] Angela now has income, his income increased substantially, both parties have remarried, and Trent now lives with, and arguably supports, his current wife's three children. Also, he was granted additional visitation and now qualifies for the extraordinary visitation credit. The net effect of the application of the guidelines to the facts of the case actually reduced Trent's child support obligation by approximately eighty dollars per month. We conclude the modification of the amount of the child support was warranted in this case.

Further, Trent asserts that the "equities do not weigh in favor of granting Angela additional tax exemptions or a lesser percentage for uncovered medical

---

[5] He raised the issue for the first time in his reply brief. We will not consider issues first raised in a reply brief. *State v. Walker*, 574 N.W.2d 280, 288 (Iowa 1998).

expenses when her overnights with the children will be decreased and Trent will incur more costs caring for the children.

We begin by noting Angela was not granted a "lesser percentage of uncovered medical expenses" as Trent claims. In fact, her percentage went up. The dissolution decree provided Trent would cover 100% of the uncovered medical expenses after the first $250 per child in light of the fact Angela had no income at the time. Under the modification, Trent now pays only seventy-four percent of the uncovered medical expenses after the first $250 per child, and Angela now pays twenty-six percent. This is in proportion to the parties' net income, and we find it equitable in this case.

The prior dissolution decree provided Trent with all three tax exemptions in light of the fact Angela was not working, and thus, she could not take advantage of any tax benefit. The modification provided each party with one tax exemption and then ordered the parties to alternate, on a yearly basis, the third tax exemption. In light of the fact Angela is now working and has the ability to take advantage of the tax savings from a tax exemption, we conclude the modification ordered was equitable.

## V. Attorney Fees and Costs.

Finally, Trent challenges the district court's decision to award $2000 in trial attorney fees to Angela. We review a district court's decision to award trial attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). The trial court awarded the fees in light of the "financial status of both parties." We find no abuse of discretion in this decision.

Angela also requests an award of appellate attorney fees, which Trent claims should be denied. The award of appellate attorney fees rests in our discretion, and we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Angela's attorney submitted an affidavit asserting approximately $9700 was incurred for the appeal. In light of the fact that Angela was forced to defend the district court decision and the relative merits of Trent's appeal, we award Angela $2000 in appellate attorney fees.

Finally, Angela filed a motion prior to this case being submitted to our court seeking to assess $57.60 in costs against Trent. Trent had required that Angela front this expense under Iowa Rule of Appellate Procedure 6.905(13)(a) because she requested documents be included in the appendix that he considered unnecessary for the determination of issues on appeal. After consideration of the issues on appeal in relation to the documents requested by Angela to be included in the appendix, we agree with Trent that the documents in question were unnecessary to our determination. Angela is charged with paying for the costs associated with including these documents in the appendix, such expense having already been paid by Angela. All other costs on appeal are assessed to Trent.

## VI. Conclusion.

We affirm the district court's decision denying Trent's request to modify the physical care but granting a modification of the visitation, child support, uncovered medical expenses, and tax exemptions. We award Angela $2000

appellate attorney fees, assess $57.60 costs to Angela, and assess all remaining costs to Trent.

**AFFIRMED.**