# IN THE COURT OF APPEALS OF IOWA

No. 16-0553
Filed December 21, 2016

**ALYNN SMITH,**
        Petitioner-Appellee/Cross-Appellant,

**vs.**

**HOWARD EATON,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, David M. Porter,

Judge.

        A father appeals, and a mother cross-appeals, the district court's

modification decision. **AFFIRMED AS MODIFIED.**

        Lynne Wallin Hines of Lynne W. Hines Law Office, Des Moines, for

appellant/cross-appellee.

        Jeffrey A. Kelso of Cunningham & Kelso, P.L.L.C., Urbandale, for

appellee/cross-appellant.

        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Howard Eaton appeals, and Alynn Smith cross-appeals, the district court's modification order regarding the parties' minor child. Howard asserts the child support that the court ordered Alynn to pay should have been retroactive to November 2014. He claims the court abused its discretion in not awarding him trial attorney fees as the successful party. He takes issue with the court's decision to grant seven weeks of summer visitation to Alynn, asserting it should only be six weeks. He also asks that we reverse the district court's award of attorney fees to Alynn that pertain to the parties' dispute over the court's jurisdiction. In her cross-appeal, Alynn claims the court should not have awarded physical care of the parties' child to Howard, the court's child support calculation is incorrect, and the court should not have ordered all additional visitation to take place in Tennessee.

**I. Background Facts and Proceedings.**

Howard and Alynn are the parents of a child born in 2003. The court entered a paternity and custody decree in 2004 placing the child in Alynn's physical care, subject to Howard's visitation. That decree was modified in February 2008 to grant the parties joint physical care. Howard moved to Arkansas in July 2009, leaving the child in Iowa with Alynn and returning to see the child monthly. Alynn began experiencing behavioral issues with the child and discussed with Howard the possibility of having the child live with Howard in Arkansas. The parties agreed to a ninety-day trial period beginning in December 2009. In the late spring 2010, the parties negotiated the terms of a modification decree that would provide for the child to remain living in Arkansas with Howard,

with visitation to Alynn, and establish Alynn's child support obligation. While an agreement was reached and Howard signed the necessary documents, Alynn changed her mind and refused to file the modification decree.

Thereafter, Howard instituted a custody action in Arkansas in September 2010. Though the action was served on Alynn, she failed to respond, and a default order was entered in November 2010, establishing Alynn's child support, retroactive to December 2009, and giving Howard "full custody" of the child. The order did not provide any specific visitation schedule for Alynn, but she continued to have visitation with the child during his breaks from school, including the fall break, winter break, spring break, and a portion of the summer break every year.

In August of 2011, Howard and the child moved from Arkansas to Tennessee. Visitations with Alynn continued on all of the child's school breaks, and Alynn continued to pay the child support ordered by the Arkansas court. In November 2013, Howard attempted to have the Arkansas decree registered with the Tennessee court. After Alynn filed a resistance, the Tennessee court denied the registration, finding it appeared Iowa retained jurisdiction to modify the 2008 decree, making the Arkansas order invalid. Alynn filed a motion for a declaratory judgment in Arkansas asking that the 2010 order be declared void *ab initio*. In July 2014, the Arkansas court granted Alynn's motion, declaring Iowa retained exclusive jurisdiction to modify the 2008 custody order and that the 2010 Arkansas order was void in light of the lack of subject matter jurisdiction.

That same week, Alynn filed a modification petition and a petition for writ of habeas corpus in Iowa, and Howard filed a modification action in Tennessee. The Iowa court annulled Alynn's petition for writ of habeas corpus, concluding

"[t]he best interests of the child mandate that the child be returned to Tennessee in time to start school." However, the Iowa court denied Howard's application for Iowa to decline jurisdiction to allow the Tennessee action to continue. In denying Howard's request, the court noted Howard

> attempted to secure jurisdiction in Arkansas through unjustifiable conduct in restraining the child and he continues with these same actions in Tennessee. This Court cannot not reward a parent's use of the minor child as a pawn to attempt to secure jurisdiction in another state. Further, Iowa is not an inconvenient forum to modify its custody order.

Thereafter, the Tennessee modification action was dismissed, and the modification action proceeded solely in Iowa.

After a four-day trial in November 2015, the court issued its modification ruling on December 24, 2015. The court placed the child in Howard's physical care subject to Alynn's visitation rights, which occur in conjunction with the child's school breaks, and ordered Alynn pay child support starting on January 1, 2016. Both parties filed posttrial motions under Iowa Rule of Civil Procedure 1.904(2). In response, the court filed an amended and substituted ruling and order on February 24, 2016, which, among other things, reduced the amount of monthly child support Alynn was required to pay, denied Howard's request for the child support obligation to start in November 2014, adjusted the start date of the summer visitation, provided all additional visitation on the child's three-day weekends would take place in Tennessee, outlined the obligations of the parties with respect to the child's mode of transportation for the visitation and the parties' payment obligations for that transportation, and awarded Alynn attorney fees incurred to contest the jurisdiction issue. Both parties now appeal.

## II.  Scope and Standard of Review.

Our review of this modification petition is de novo as the matter was heard in equity.  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  We give the district court's findings of fact weight, especially with regard to the court's assessment of the credibility of witnesses, but we are not bound by those findings.  *Id.*  With respect to the district court's decision to award attorney fees, our review is for the abuse of discretion.  *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016).

## III.  Modification of Physical Care.

Alynn claims the district court should not have granted physical care of the parties' child to Howard in Tennessee but instead should have placed the child in her care in Iowa.  A party seeking to modify the terms of custody decree "must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered."  *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016).  In addition, that party must "prove a superior ability to minister to the needs of the child[]."  *Id.*  The change in circumstances must be permanent and relate to the welfare of the child.  *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009).

Because the Arkansas decree was declared void *ab initio*, we must look for a change in circumstances since the last Iowa custody order in February of 2008.  That decree awarded the parties joint physical care of the child and was entered when both parties lived in the Des Moines area.  Since then, Howard has relocated to Arkansas and then to Tennessee with the child living in his care as of December 2009.  Both parties agree Howard's move from Iowa was a

substantial change in circumstances that made joint physical care of the child unworkable. Thus, we need to address which party can offer superior care.

By the district court's assessment, the child at issue is a "happy, well-adjusted, smart, funny, and successful" twelve-year-old, who is an honor roll student, first chair viola player, beta club member, and active on the basketball and baseball teams. After moving to Arkansas, the child no longer needed medication to manage ADHD and developed a warm, loving relationship with Howard's then-girlfriend and now wife. The child has now been in Howard's care for six years, and Howard has provided "excellent care."

Alynn claims Howard unjustifiably restrain the child from seeing her, asserting Howard refused to return the child to her when she "canceled" the physical care trial period in 2010 and told Howard she would not sign the negotiated modification decree. While the district court noted there were three disputes over summer visitation, they all stemmed from Howard's concern that Alynn would not return the child at the end of the visitation period and the lack of a court order placing the child in his care. All three problems occurred when litigation was pending or threatened, and all three times Alynn was granted visitation once assurances were made that the child would be returned to Howard. Otherwise, the district court concluded there was "scant evidence that [Howard] maliciously interfered with [Alynn's] contact with [the child]."

Alynn claims Howard refuses to share information with her about the child, instead delegating much of the parenting responsibility to his wife because Howard travels often for his job. Alynn claims her communication with Howard's wife became strained after Howard hired his wife's law firm in Tennessee to

represent him in the custody dispute. However, the district court found Howard and his wife kept Alynn informed of the child's camps, concerts, sports and school schedules. In addition, Howard initiated most of the scheduling and planning for Alynn's visitations with the child over the past six years.

Alynn claims Howard interferes with her ability to communicate with the child by taking away the iPad the child uses to message her and refuses her offers to purchase the child a cell phone. Again, the district court did not find any evidence to substantiate Alynn's claims, noting the evidence indicated many phone calls were initiated from Howard's or his wife's cell phone to Alynn, missed calls were returned, the iPad was taken away from the child for discipline purposes and the child remained able to contact Alynn via cell phone, and Howard did not want the child to have a cell phone at this time due to his concerns over the child's level of responsibility and safety.

Finally, Alynn claims she can provide a more stable environment for the child. The child has not been in her care since December 2009. At that time, she was having difficulty controlling the child's behavior in school, and the child was on medication and a behavior management plan with the school. Because she could not address the behavior concerns, she asked Howard to assume care. The court noted the lack of evidence in the record as to Alynn's plans to ensure the child is successful in school, for who would care for the child when Alynn is unable to provide the care such as before and after school, or what extracurricular activities would be available to the child. The court concluded that it had no doubt Alynn loved the child unconditionally, but she failed to meet her burden of proof to demonstrate she could provide superior care.

Upon our de novo review of the record, we agree with the district court's assessment of the evidence and affirm the court's decision to grant Howard physical care of the child.

**IV. Visitation.**

Both parties also appeal different aspects of the court's decision governing the visitation scheduled. Howard appeals the length of the summer visitation, and Alynn challenges the court's geographic restrictions on the additional visitation allowed during the child's three-day weekends.

**A. Summer.** The amended modification decision provided Alynn would receive seven weeks of visitation during the summer commencing on June 10, 2016. Howard claims the court should have ordered only six weeks of summer visitation to ensure he is allowed some meaningful time with the child when the child is on break from school. Howard points out that Alynn has the child for most of the time the child is on break from school, including spring break and fall break every year, along with one-half of the winter break.

In setting the summer visitation schedule, the court had at its disposal the child's school calendar for the 2015-2016 academic year. The calendar demonstrates that school started on August 10 and let out for the summer on May 27. There were two weeks between the end of the school year and the beginning of Alynn's summer visitation on June 10. Assuming the school commenced classes for the 2016-2017 school year at approximately the same time it did for the prior school year, Alynn's summer visitation with the child would end with a little over one week before the start of the child's school year. Thus,

Howard would receive a little more than three weeks of the child's ten-week summer break.

Alynn opposes any reduction in the number of weeks she spends with the child over the summer, noting her visitation is restricted to only when the child is on break from school because of the distance between the parties' homes. In order to maximize the time she is allowed to spend with the child, she maintains seven weeks is in the child's best interest. We disagree. Alynn is granted the vast majority of the time the child is away from his school obligations. While Howard provides care during most weekends, he is not granted many extended, uninterrupted times to spend with the child. The court's decision permits Howard to spend quality time with the child in the summer only during the two weeks at the beginning and one week at the end of the summer break. We agree with Howard he should be granted an additional week during the summer. Thus, we modify the summer visitation provision to provide Alynn with six weeks of visitation commencing on June 10 of each year.

**B. Additional Visitation in Tennessee.** The court's decree also granted Alynn additional visitation time with the child whenever the child has a three-day weekend break from school, so long as Alynn provides two weeks' notice to Howard. But the court restricted this additional visitation to take place only in Tennessee. Alynn claims on appeal the geographic restriction is unduly burdensome creating additional expense for her—hotel, rental car, and meals away from home—and unnecessarily prevents her from traveling to another state with the child. A review of the school calendar demonstrates a handful of these three-day weekends not otherwise provided for in the visitation provisions of the

decree. We agree with Alynn that such a restriction is unwarranted in this case. Alynn should be permitted exercise visitation with the child during these three-day weekends outside the geographic boundaries of the state of Tennessee. However, we conclude that Alynn bears sole responsibility for the cost of transportation for either herself or the child during these visitations.

**V. Child Support.**

Both parties also appeal different provisions of the child support decision. Alynn asserts the monthly amount of child support is too high, and Howard claims the court should have ordered Alynn to pay retroactive child support starting in November 2014.

**A. Amount.** The district court ordered Alynn to pay $645.00 per month in child support based on the court's assessment that Howard earned an annual income of $97,000 and Alynn earned an annual income of $67,000. Alynn claims the undisputed evidence was that her annual income would be less than $67,000 because she has been informed by management that no overtime would be allowed in the foreseeable future. She claims the court should have used her hourly rate multiplied by forty hours per weeks, for an annual income of approximately $57,400. She also claims the court understated Howard's income. Howard testified he would earn between $97,000 and $120,000 in 2015. After reviewing his profit and loss statements, the court estimated Howard's income would be on the lower range of his estimate and set his annual income at $97,000. Alynn claims the profit and loss estimate is not to be believed and the court should have used the higher estimate in the range Howard provided—at

least $120,000. She also claims the district court should have taken into consideration that Tennessee does not have a state income tax.[1]

A review of the only paystub submitted by Alynn at trial indicates she was earning overtime as of August 2015. As of that point in time, she had accumulated over 102 hours of overtime, earning approximately $4200. Alynn testified that while she did not anticipate there being much approved overtime going into 2016, she did not know for sure. However, Alynn's testimony established she had received overtime in 2015 and in at least the previous two years, though the amount of overtime may have fluctuated. "[O]vertime wages come within the definition of gross income used to calculate the proper award. Only when such overtime is speculative or uncertain, or where a parent is *forced* to work overtime to meet a burdensome child support obligation, may overtime pay be excluded from the guideline calculation." *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993). Alynn's equivocal testimony that her overtime may not be allowed in the foreseeable future was insufficient to prove the overtime that she has consistently received for at least the past three years was "speculative or uncertain."

Howard had been promoted in his position shortly before this modification proceeding commenced. He is a commission-based regional sales coordinator

---

[1] The monthly child support obligation initially set by the court corresponded with Howard's child support worksheet submitted as evidence at trial—$667.00. In that worksheet, a reduction was taken from Howard's income for state income tax. In the parties' posttrial motions, the lack of income tax in Tennessee was pointed out to the court. The court then filed an amended and substituted decree that reduced the monthly support obligation to $645.00 with no explanation as to the reduction. It is likely that the reduction in the child support obligation was the result of the court recalculating the obligation by removing the state income tax deduction for the portion of Howard's income earned in Tennessee. It thus appears Alynn's claim of error on this issue has already been resolved.

of insurance products. He testified his income can fluctuate based on his expenses and whether customers prematurely terminate their coverage. His best estimate was that he would make around $85,000 from his insurance sales and an additional $12,000 from a day care business he owns in Arkansas. The profit and loss statements from Howard's two businesses indicated the day care center was not making a profit as of the middle of October 2015 and his insurance business was experiencing a year-to-date profit of approximately $41,000. While Alynn claims these statements are not to be believed, there was no evidence to support her assertion Howard's annual income should be at least $120,000. We agree with the district court's assessment of the parties' income and the amount of the resulting child support obligation.

**B.   Retroactivity.**   While not contesting the monthly amount of child support, Howard appeals the court's denial of his request for retroactive child support, beginning three months after the modification petition was filed— November 2014.[2]   When the Arkansas decree was voided in July 2014, Alynn's support obligation terminated, and she did not pay any support for the child during the pendency of the modification proceeding. However, the child remained in Howard's care. The court ordered the new support obligation to begin on January 1, 2016, thereby creating a gap in the support payments of approximately seventeen months.

---

[2] Alynn claims Howard did not preserve error on this claim because he failed to contest the issue at trial. As the trial court was presented with the issue and ruled on it in its response to the rule 1.904(2) motions, we consider the issue preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Iowa Code section 598.21C(5) (2013) permits retroactive child support in modification proceedings, but such an award is within the discretion of the trial court and may be retroactive "only from three months after the date the notice of the pending petition for modification is served on the opposing party." *See In re Marriage of Bircher*, 535 N.W.2d 137, 139 (Iowa Ct. App. 1995). In denying Howard's request, the district court stated:

> Eaton further requests this Court order Smith to pay retroactive child support. Based on the state of this record the Court does not believe that is appropriate. As detailed above, both parties are equally responsible for the circumstances now before the Court. Eaton, however, had ample opportunity to bring this issue before the Iowa District Court. He chose not to. Implicit in his failure to act is the notion that he was satisfied with the status quo. Smith having no legal obligation to pay child support was part of that status quo. Eaton must now live with his choices. Eaton's request for retroactive child support should be and is hereby denied.

The modification petition was filed in July 2014. Howard never filed a motion requesting a temporary modification of the 2008 child support obligation during the pendency of the action. *See* Iowa Code § 598.21C(4) (permitting the court to temporarily modify child support while a modification petition is pending). Howard resisted Alynn's request for a hearing on temporary matters, which was to include an assessment of temporary child support. In addition, Howard testified at the modification trial that Alynn had overpaid the child support ordered under the Arkansas decree because her income withholding order was never changed after she had satisfied the retroactive portion of that decree. Howard admitted to receiving an extra $26 per week from Alynn from November 2010 until July 2014 and admitted he never refunded this overpayment to Alynn. We

find no abuse of discretion in the court's refusal to order retroactive child support in this case.

## VI.  Attorney Fees.

Finally, Howard appeals the court's decision requiring him to pay Alynn's attorney fees related to the litigation over which state had subject matter jurisdiction and the court's failure to award him attorney fees as the successful party in the modification proceeding.  In addition, both parties ask for an award of appellate attorney fees.

**A.  Jurisdiction Attorney Fees.**  With respect to actions brought pursuant to the Iowa Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Iowa Code section 598B.312(1) provides:

> The court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney fees, investigative fees, expenses for witnesses, travel expenses, and child care expenses during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

As it was determined that Iowa retained subject matter jurisdiction over the modification proceeding, Alynn was the prevailing party, and the court was required to award attorney fees unless the award would have been "clearly inappropriate."  Howard claims this case falls within the "clearly inappropriate" category in light of Alynn's refusal to file the negotiated modification decree in Iowa in 2010 after the child began living with Howard in Arkansas.  If Alynn had followed through with her promise to file the modification action then, Howard asserts the need for any subsequent action could have been avoided.  However, it was not the attorney fees generated in 2010 from the failure of Alynn to file the

modification action that is at issue in this award. It was the attorney fees expended by Alynn to contest Howard's assertions that Iowa no longer retained subject matter jurisdiction in 2014 that are at issue.

In the order denying Howard's request to decline jurisdiction, the Iowa court noted,

> Howard could have sought enforcement of the settlement agreement in Iowa [in 2010] or he could have retained Iowa counsel to have the agreement filed in Iowa. Instead, he sought and obtained a default modification order in Arkansas, his Arkansas attorney knowing full well that the Arkansas court did not have jurisdiction to modify Iowa's order. . . .
> According to the intent of the UCCJEA, Howard's actions in circumventing the rule of law were not in the best interests of the minor child. To allow Tennessee to assume jurisdiction would reward Howard for his strong-handed and unjustifiable conduct as well as thwart the entire intent of the UCCJEA.
> . . . .
> . . . [Howard] attempted to secure jurisdiction in Arkansas through unjustifiable conduct in restraining the child and he continues with these same actions in Tennessee. This Court cannot not reward a parent's use of the minor child as a pawn to attempt to secure jurisdiction in another state. Further, Iowa is not an inconvenient forum to modify its custody order.

We cannot conclude that district court should have found an award of attorney fees under section 598B.312 was "clearly inappropriate" in this case. We affirm the district court's order awarding Alynn $6247.50 in attorney fees.

**B. Modification Trial Attorney Fees.** Next, Howard claims the court should have awarded him attorney fees for the modification proceeding because he was the prevailing party. Iowa Code section 600B.26: "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." An award of trial attorney fees rests in the district court's sound

discretion.  *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997).  We will not disturb the ruling on appeal unless there is an abuse of discretion.  *Id.* We find no abuse of discretion in this case and affirm the court's refusal to grant either party their request for trial attorney fees.

**C.  Appellate Attorney Fees.**  Both parties request an award of appellate attorney fees.  Whether to award attorney fees on appeal rests in our discretion, and we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal."  *Id.*  Upon our review of the merits of this appeal, we decline to award either party appellate attorney fees.

**VII.  Conclusion.**

We affirm the district court's modification decision regarding its placement of the child in Howard's care, the child support amount and its nonretroactivity, and the court's decision to award Alynn attorney fees related to the jurisdictional dispute but do not award either party attorney fees for the modification proceeding.  However, we modify two provisions with respect to visitation: Alynn is entitled to six weeks of summer visitation, and she is not restricted to the state of Tennessee if she exercises additional visitation during the child's three-day weekends, but she is solely responsible for all transportation expenses related to the three-day weekend visitation.  Neither party is awarded appellate attorney fees.

**AFFIRMED AS MODIFIED.**