# IN THE COURT OF APPEALS OF IOWA

No. 19-2139
Filed April 1, 2020

**IN THE INTEREST OF J.G.,**
**Minor Child,**

**C.T., Mother,**
   Appellant,

**K.G., Father,**
   Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jean Capdevila, Davenport, attorney for appellant mother.

G. Brian Weiler, Davenport, attorney for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Timothy J. Tupper of Tupper Law Firm, Davenport, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Doyle, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

The mother and father separately appeal the termination of their parental rights to J.G. While only the mother asserts the State failed to prove the statutory grounds for termination, both parents assert termination is not in the child's best interests and the Iowa Department of Human Services (DHS) failed to make reasonable efforts for reunification. The father also requested additional time for reunification. We affirm the termination of the parental rights of both parents.

### I.      Background Facts and Proceedings

J.G. was born September 2017 with underdeveloped eyes and limited vision.[1] The family came to the attention of DHS in January 2018 when law enforcement found a large amount of marijuana and drug paraphernalia in the family home while executing a search warrant. Both parents were already on probation at the time, and both parents were charged with child endangerment and drug offenses resulting from the search. During the DHS investigation, the mother acknowledged she and the father used marijuana daily. The parents initially agreed to DHS services, but they largely refused to cooperate with recommendations at the time. The father was subsequently incarcerated on May 12 for felony eluding and driving while barred. The mother has been in and out of jail several times both before and throughout DHS involvement here. On June 28, the juvenile court issued an ex parte order removing the child from the parents' care. On September 14, the court adjudicated J.G. in need of assistance. After nearly one year of offered services, the court held a termination hearing on

---

[1] J.G.'s condition is known as optic nerve hypoplasia.

September 26, 2019. On December 11, the court issued its order terminating the parental rights of both parents.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's factual findings, but they do not bind us. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The paramount concern is the child's best interests. *Id.*

## III. Analysis

We begin by considering the statutory grounds for termination. *See P.L.*, 778 N.W.2d at 40. The juvenile court terminated the parental rights of both parents under Iowa Code section 232.116(1)(h) (2019).[2] The mother challenges this ground for termination under the fourth element only, arguing the State failed to prove the child could not be returned to her care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

---

[2] Under Iowa Code section 232.116(1)(h), the juvenile court may terminate parental rights if it finds all of the following:

    (1) The child is three years of age or younger.

    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

As an initial matter, the mother argues the juvenile court applied a lower legal standard than "clear and convincing evidence." *See* Iowa Code §§ 232.116(1)(h), 232.117(3). She notes that during a November 4, 2019 permanency-review hearing—occurring over one month after the termination hearing—the juvenile court remarked it has gone "back and forth on" termination and "just can't" reach a decision. The court then issued its termination order on December 11, more than two months after the termination hearing and over one month after the review hearing. The mother argues the court's hesitancy during the November review hearing "illustrates the antithesis of clear and convincing evidence." However, the record for the termination proceeding closed at the time of the termination hearing. The court's later comments during the review hearing are outside the record, and we cannot consider them. *See* Iowa R. App. P. 6.801 (explaining the materials that "constitute the record on appeal"). Furthermore, the court's later comments could reflect its opinion that any part of the three-step analysis under Iowa Code section 232.116(1), (2), or (3) presents a close call, such as the best interests of the child or a claimed parental bond. Regardless, we review the record de novo to ensure we are satisfied the State proved the grounds for termination by clear and convincing evidence. *See in re Marriage of Brown*, 778 N.W.2d 47, 54 (Iowa Ct. App. 2009) (noting any error by the district court in applying the standard of proof "would be obviated by our de novo review").

The mother points to her improved parenting skills, which her social worker attested to at the hearing, as proof J.G. could be returned to her. While we recognize the mother has made progress, her efforts are simply too little, too late and leave J.G.'s safety and wellbeing at risk. DHS has been involved with this

family since January 2018.  The mother described things as "very different" since she last left jail in April 2019, but her progress since then cannot erase her prior failures to participate in services.  DHS became involved due to drug use by the parents in the presence of J.G., and the mother's drug use remained a concern throughout these proceedings.  She sporadically participated in drug testing, with multiple missed tests and multiple positive results.  She underwent a substance-abuse evaluation in June 2019, which recommended no treatment after she falsely claimed she last used marijuana in March 2018.  She had a positive drug test less than one month before the termination hearing, and she had a pending drug-possession charge at the time of the hearing, indicating her drug and legal issues are ongoing.  Her mental health is also a concern, as she testified she has been diagnosed with post-traumatic stress disorder, anxiety, depression, and attention deficit hyperactivity disorder.  She began seeing a mental-health therapist after DHS became involved, though she acknowledged "inconsistencies" with attending these appointments.  In August 2019, she stopped seeing this therapist and revoked her release for the therapist to share information with DHS; as a result, the record contains no documentation of her treatment with this therapist.  She was not seeing any therapist at the time of the hearing, though she testified she has an appointment scheduled with a new therapist in October 2019.  Due to her continuing issues with criminal behavior, substance use, and mental health, we find clear and convincing evidence the child cannot be returned to her care.  Therefore, we find the statutory grounds for termination met by clear and convincing evidence as to the mother.  *See* Iowa Code § 232.116(1)(h).

Although the father does not directly challenge the statutory grounds for termination, he claims he has "substantially complied" with DHS expectations. He has been incarcerated since May 2018. The initial DHS case plan detailed that the father "will provide for [J.G.'s] daily physical, emotional, educational and medical needs." However, the father remained incarcerated through the termination hearing with an uncertain release date. Due to his ongoing incarceration, the father cannot claim to have "substantially complied" with DHS expectations, the child cannot be returned to his care, and his indirect challenge to the statutory grounds for termination therefore fails.

We next consider whether termination is in the child's best interests.[3] *See P.L.*, 778 N.W.2d at 40; *see also* Iowa Code § 232.116(2) (directing the court to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.").

Regarding the mother, she had visitation with the child three times per week at the time of the termination hearing. The social worker testified these visitations have gone "[w]onderfully," and the mother points to these visits and her progress discussed above as evidence that terminating her parental rights is not in the child's best interests. However, the social worker testified these "wonderful" visitations only began when the mother left jail in April 2019, over one year after

---

[3] After the best-interests analysis, the juvenile court considers whether any of the permissible factors in section 232.116(3) exist; if so, the court "need not" terminate the parent-child relationship. *See P.L.*, 778 N.W.2d at 41. Because neither parent alleges the existence of any of these factors, we do not review this step on appeal. *See id.* at 40.

DHS became involved. Furthermore, the child has numerous therapy appointments due to vision issues. The mother attends one of these appointments each week as part of visitation. For a two-week period in August 2019, she attended three of these appointments each week, allowing her to visit the child every weekday. She testified she stopped attending the additional weekly appointments after two weeks because it was too difficult to attend the morning appointments after working overnight for her job. However, she was vague in describing her work schedule, testifying, "I make my own schedule" and that she took two weeks off from work prior to the hearing. Considering her failure to attend most of the child's necessary therapy appointments despite her flexible schedule and recent time off from work, as well as her limited progress described above, we find the termination of her parental rights is in the child's best interests.

Regarding the father, he has been incarcerated for all but about the first eight months of the child's life. He testified he spent "pretty much most of the day with" the child prior to incarceration, but he has only had "a phone relationship with" the child since incarceration. He testified he expects to be released to a halfway house by November 2019—after the termination hearing—but the DHS report notes he has been saying he expects to be released soon for several months. He has had no physical contact with the child in over one year, and he has not yet set up visitation with the child since he was transferred to a closer prison. Due to this limited contact and uncertain incarceration release date, we find termination of the father's parental rights is in the child's best interests. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (finding, in the context of a private termination, Iowa case

law "should not be relied upon as an endorsement of protecting an incarcerated parent's rights at the expense of a child's best interest").

Next, both parents assert DHS failed to make reasonable efforts toward reunification. "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id*. "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id*. The services DHS offered to the parents include mental-health evaluation and treatment, substance-abuse evaluation and treatment, transportation, parenting education, and visitation. On October 22, 2018, the father filed a motion specifically requesting visitation in prison. In a November 19, 2018 dispositional order, the juvenile court denied the father's motion, concluding that "given [the child's] vision problems and age the Department is not required to provide visitation while [the father] is so far away." As mentioned above, the father has not set up visitation since transferring to a closer prison. The mother also requested more visitation from DHS, but she declined to consistently attend the child's therapy appointments when given the opportunity to do so. Therefore, we consider the services DHS provided for reunification as reasonable and find the evidence sufficient for termination. *See C.B.*, 611 N.W.2d at 493.

Finally, the father requested additional time for reunification. The juvenile court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the

additional six-month period." Iowa Code § 232.104(2)(b). The father has not addressed the issues that led to removal, and it remained unclear to the juvenile court whether the father would still be incarcerated in six months. Therefore, the court appropriately denied his request for additional time. *See In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011) ("We will not gamble with a child's future by asking him to continuously wait for a stable biological parent, particularly at such a tender age.").

**AFFIRMED ON BOTH APPEALS.**