# IN THE COURT OF APPEALS OF IOWA

No. 20-0302
Filed November 4, 2020

IN RE THE MARRIAGE OF BRIAN PATRICK GALLEGER
AND ALENNA LINDA GALLEGER

Upon the Petition of
**BRIAN PATRICK GALLEGER,**
        Petitioner-Appellee,

**And Concerning**
**ALENNA LINDA GALLEGER,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.


        A mother appeals the district court decision denying her request for modification of physical care. She also appeals the modification of visitation and transportation expenses. **AFFIRMED AS MODIFIED.**


        Elizabeth Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des Moines, for appellant.

        Marcy Lundberg of Cordell Law LLP, Des Moines, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the district court decision denying her request for modification of physical care, visitation, and transportation expenses. Both parties seek attorney fees for this appeal. We affirm the decision of the district court on the issues of physical care and transportation expenses and modify the length of the summer visitation. We deny the requests for appellate attorney fees.

## I.     Background Facts & Proceedings

Brian Galleger and Alenna Galleger, now known as Alenna Wahlert, were previously married. They are the parents of J.P.G., who was born in 2012. Brian has been a service member in the military since he was eighteen years old. At the time of trial, he was entering his twelfth year of military service.

Brian and Alenna separated in 2015 while they were living in Germany. On July 28, 2015, the parents signed a parenting plan that provided for joint legal custody with Brian having physical care of the child. Alenna was granted "reasonable visitation as the parents agree." They also signed a settlement agreement that provided for child support and other financial matters. Brian and the child moved to the United States, where Brian was stationed at Fort Riley, Kansas. Alenna remained in Germany.

A dissolution decree was filed in Iowa for the parties on February 19, 2016, which incorporated the parenting plan and settlement agreement. The court ordered Alenna to pay child support of eighty-three dollars per month, except for June, July, and August 2016, when the child would be in her care. The decree stated, "The parties will agree on a parenting plan once [Alenna] has re-located to

the United States.  They will work cooperatively to assure that the child has the maximum amount of contact with each parent."

Alenna moved back to the United States in July 2016.  At first, she lived in Kansas with Brian and the child.  After a few months, Alenna moved to Iowa, where she has extended family.  She exercised visitation with the child in Kansas.  At times, Brian brought the child to Iowa, where he also has extended family.  In August 2018, Brian believed he was going to be deployed overseas, and he agreed the child would stay with Alenna in Iowa while he was deployed.  Brian was ultimately not deployed, and in November 2018, he was stationed in Virginia.

On November 6, 2018, Alenna filed an application for modification of the dissolution decree.  She claimed there had been a substantial change of circumstances due to Brian's move to Virginia.  Alenna asked to have the child placed in her physical care.  She also sought an injunction prohibiting Brian from moving the child to Virginia.  Her request for an injunction was denied.  J.P.G. moved to Virginia in December 2018.

A modification trial was held beginning January 7, 2020.  The district court denied Alenna's request for modification of physical care, finding she had not shown there was a substantial change in circumstances.  Alenna was granted visitation on every third weekend, alternating holidays, four weeks in the summer, and telephone or video contact no less than two times per week.  The court ordered Brian to pay two-thirds of the child's travel expenses, and Alenna was ordered to pay one-third of the expenses.  The court increased Alenna's child support obligation to $279.82 per month.  Alenna appeals the district court's decision.

## II.     Standard of Review

In this equitable action, our review is de novo.  *In re Marriage of Vaughan*, 812 N.W.2d 688, 692 (Iowa 2012).  We examine the entire record and adjudicate the issues anew.  *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).  We give weight to the fact findings of the district court, especially in determining the credibility of witnesses, but are not bound by these findings.  Iowa R. App. P. 6.904(3)(g); *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005).  Our overriding consideration is always the child's best interests.  Iowa R. App. P. 6.904(3)(o).

## III.     Modification of Physical Care

Alenna contends the district court should have granted her request to modify physical care.  She claims there has been a substantial change in circumstances because Brian and the child moved from Kansas, where she was able to visit frequently, to Virginia, which is further from Iowa.  She points out this was a move of more than 150 miles and states that under Iowa Code section 598.21D (2018),[1] this should be considered a substantial change in circumstances.

---

[1] Iowa Code section 598.21D provides:

> If a parent awarded joint legal custody and physical care or sole legal custody is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances.  If the court determines that the relocation is a substantial change in circumstances, the court shall modify the custody order to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent.  If modified, the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact between the nonrelocating parent and the minor child.  The modification may include a provision assigning the responsibility for

Alenna additionally asserts there have been other changes—she moved to Kansas from Germany and then moved to Iowa, and the child lived with her from August to December 2018. In addition, Alenna argues for modification of physical care due to the fact that she is remarried, she and her husband have a child, and J.P.G. is bonded with his younger half-sibling. Lastly, Alenna argues Brian is inattentive to J.P.G.'s schooling and medical needs.

On the issue of modification of physical care, the Iowa Supreme Court has stated:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

The court may consider the relocation of the child's residence of more than 150 miles from his or her current residence a substantial change in circumstances for purposes of modification of physical care. Iowa Code § 598.21D. "[T]he statute tempers the ability of a parent who is responsible for his or her child[ ]'s physical care to relocate." *In re Marriage of Thielges*, 623 N.W.2d 232, 237 (Iowa Ct. App. 2000).

transportation of the minor child for visitation purposes to either or both parents.

Brian argued that because he was in the military, it would be within the contemplation of the court at the time of the dissolution decree that he would be required to move as a result of his service, and therefore, the provision in section 598.21D should not be applied. In *Thielges*, the parties' dissolution decree restricted relocation of the children. 623 N.W.2d at 234. Despite this restriction, which showed relocation was within the contemplation of the court at the time of the decree, we considered the application of section 598.21D. *Id.* at 236–37. We determined that even when the statute applies, it "does not change the burdens of proof applicable to custody modification requests." *Id.* at 237.

Although Brian and the child have moved more than 150 miles, which may be considered a substantial change of circumstances under section 598.21D, "not every change in circumstances constitutes a sufficient basis for modification." *See In re Marriage of Chmelicek*, 480 N.W.2d 571, 574 (Iowa Ct. App. 1991). The district court determined there had not been a substantial change in circumstances due to the military move. Even if we were to find that the move from Kansas to Virginia was a substantial change of circumstances, based on the record, we conclude that Alenna falls short on the second required prong, as Alenna must also show she has the ability to provide superior care for the child. *See In re Marriage of Malloy*, 687 N.W.2d 110, 114 (Iowa Ct. App. 2004). "Our focus is on the long-range best interests of the child[ ]." *In re Marriage of Grabill*, 414 N.W.2d 852, 853 (Iowa Ct. App. 1987).

We find Alenna has not met her heavy burden to show she can minister more effectively to the child's best interests. Alenna testified the child needs stability. In this case, that stability can be achieved by leaving the child in Brian's

physical care. Brian has been the child's primary caretaker since he and the child moved from Germany to Kansas, with the exception of a short period when Brian believed he would be deployed. We note that once Brian moved from Kansas, as he was required to do for his military service, there would be a relocation of the child to either Virginia or Iowa. "[O]ur case law places greater importance on the stability of the relationship between the child and the primary caregiver over the physical setting of the child." *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998). Brian's continued physical care of the child provides stability, and we conclude this is in the child's long-term best interests. J.P.G. is attending school in Virginia and participating in extra-curricular activities, and Brian is actively involved in all aspects of his son's life. Importantly, he has assured a relationship between the child and the mother.

As to Alenna's other concerns, we, like the district court, find Brian's response to each of the allegations to be reasonable "and that even if the assertions are accurate, they neither individually nor in the aggregate amount to a substantial and material change in circumstances." We affirm the district court's decision denying Alenna's request to modify physical care.

## IV. Visitation

Alenna asserts if she is not awarded physical care of the child, she should be granted more summer visitation time. The district court determined she should have four weeks with the child in the summer, in addition to her regular visitation. Alenna asks for nine weeks with the child each summer.

"Upon awarding one parent physical care, the district court shall award the other parent visitation that assures the child[ ] 'the opportunity for the maximum

continuing physical and emotional contact with both parents.'" *In re Marriage of Gensley*, 777 N.W.2d 705, 717 (Iowa Ct. App. 2009) (quoting Iowa Code § 598.41(1)(a)). We "apply a less demanding burden of proof to modifications of visitation," than a modification of physical care. *In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009). "A parent seeking to modify visitation must only establish 'that there has been a *material change in circumstances* since the decree and that the requested change in visitation is in the best interests of the child[ ].'" *Id.* at 51–52 (quoting *In re Marriage of Salmon*, 519 N.W.2d 94, 96 (Iowa Ct. App. 1994)).

When one party moves, "the court can modify the custody order at issue by granting the nonrelocating parent 'extended visitation during summer vacations and school breaks and scheduled telephone contact.'" *Thielges*, 623 N.W.2d at 238 (quoting Iowa Code § 598.21D). Our primary consideration is the best interests of the child. *Gensley*, 777 N.W.2d at 718. "[T]he best interests of [a] child[ ] are ordinarily fostered by a continuing association with both parents." *Brown*, 778 N.W.2d at 52; *see also Salmon*, 519 N.W.2d at 95 (recognizing "reasonable discretion of the trial court to modify visitation rights" and declining to "disturb its decision unless the record fairly shows it has failed to do equity").

The parties agreed a modification of the visitation provision of the dissolution decree was required, as the original decree did not provide a visitation schedule. Rather, visitation was set as the parties could agree. In the modified decree, Alenna was granted visitation on every third weekend, alternating holiday and school breaks, and four weeks in the summer. The parties are also able to

agree to additional visitation.[2] Alenna has the ability to contact the child by telephone or video no less than two times per week.

Not unlike other cases where the parties' focus is on the physical care issue at trial, the record is scarce as to what type of visitation schedule is in the child's best interest. We have not been provided with the length of the summer school break in Virginia for the child. While Alenna points to her exhibit R to support her request for nine weeks of summer visitation, such exhibit represents the visitation she believed appropriate for Brian in the event she was awarded physical custody. Her proposal for Brian included only holidays and four "three or four" day contacts throughout the school year, with a longer period in the summer. Further, while Alenna argues that Brian testified she could have the bulk of the summer with J.P.G., such conversation occurred as part of settlement negotiations, not as part of either parent's trial requests.

However, the visitation schedule constructed by the district court limits Alenna's summer visitation to substantially less time than she has exercised in past summers. We are also mindful the monthly travel for Alenna to Virginia, given the young child in her home, will be burdensome. Additionally, Brian acknowledged that he scheduled military training required of him for the summer months when J.P.G is with his mother. Given the same, we increase the summer visitation for Alenna to seven weeks. We find increasing the summer visitation, given the physical distance between the parents, does equity between the parties

---

[2] Brian has historically allowed liberal visitation for Alenna and her family. On several occasions, Brian allowed Alenna and her boyfriend to stay at his home during visitation when Brian was stationed in Kansas.

and affords a continued association with both parents and the opportunity for the maximum continuing physical and emotional contact with both parents. We conclude this modification "preserve[s], as nearly as possible, the existing relationship between the minor child and [Alenna]." *See* Iowa Code § 598.21D. This expansion will likely still allow the child to experience some summer vacation with each parent. We affirm the visitation schedule as modified.

## V. Transportation Expenses

The modification order provides, "The parties shall share in payment of all expenses associated with the child's travel. Based on the parties' income disparity [Brian] shall pay two-thirds (2/3) and [Alenna] shall pay one-third (1/3) of said travel expenses." Alenna asserts that the decree does not address her travel expenses. She notes that when she exercises visitation on every third weekend, she is required to pick up the child and drop him off at Brian's residence. She points out this will require her to travel to Virginia, rent a car, and obtain a hotel room.

Although Brian is the party who moved, it is equitable for the parties to share visitation expenses. *See In re Marriage of Wahlert*, 400 N.W.2d 557, 561 (Iowa 1987). In the case *In re Marriage of Moyer*, No. 11-1695, 2012 WL 2412075, at *6 (Iowa Ct. App. June 27, 2012), we approved a provision requiring a mother to share in the travel expenses for an out-of-state father's visitation during school breaks and the summer, but not share in the father's travel expenses for weekend visitation.

We find the district court's order regarding travel expenses—requiring Brian to pay two-thirds of the expenses for holiday and school breaks and summer visitation but not requiring him to contribute to Alenna's expenses for weekend

visitation—is equitable under the facts of the case. As noted by Brian, Alenna travelled to Kansas and paid her own expenses for visitation with the child prior to the modification. We affirm the district court on this issue as well.

## VI. Attorney Fees

Alenna and Brian seek attorney fees for this appeal. Appellate attorney fees are not awarded as a matter of right but rest within the court's discretion. *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018). In considering appellate attorney fees, we look to "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (quoting *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006)). Brian was the successful party on the majority of issues on appeal. However, Alenna does not have the ability to pay Brian's attorney fees. We determine each party should pay his or her own appellate attorney fees.

We affirm the decision of the district court as modified.

**AFFIRMED AS MODIFIED.**