**In re the MARRIAGE OF Sarah Leigh BROWN and Troy Matthew Brown**

**Upon the Petition of Sarah Leigh Brown n/k/a Sarah Leigh Peck, Petitioner–Appellant,**

**and**

**Concerning Troy Matthew Brown, Respondent–Appellee.**

No. 08–0366.

Court of Appeals of Iowa.

Oct. 7, 2009.

Verle W. Norris and Daniel R. Rockhold, Corydon, for appellant.

Dustria A. Relph and Roberta A. Chambers of Chambers & Relph Law Firm, P.C., Corydon, for appellee.

Heard by SACKETT, C.J., and EISENHAUER and DOYLE, JJ.

DOYLE, J.

Sarah Brown, now known as Sarah Peck, appeals from a district court ruling modifying the parenting schedule set forth in the decree dissolving her marriage to Troy Brown. The central issue in this case is the burden of proof that should be applied in a modification of the shared parenting time in a joint physical care arrangement. We conclude the district court applied the correct burden of proof and affirm its judgment.

### I. Background Facts and Proceedings.

Troy and Sarah were divorced in June 2005 pursuant to a stipulated dissolution decree. They agreed to share joint legal custody and joint physical care of their minor children, Riley and Reese. A "Shared Parenting Time" schedule was set forth in the decree as follows:

In the event the parties cannot agree on the times spent with the children, the following minimum schedule shall apply:

From the present time, until September 1, 2007, the children shall be with their father in one week, from Wednesday at 4:00 p.m. to Friday at 4:00 p.m. During the alternate weeks, the children shall be with their father from 4:00 p.m. Thursday to 4:00 p.m. Saturday.

During the Summer of 2005, the parties shall divide summer time equally with the children, beginning July 1, 2005 through August 14, 2005.

Beginning the Summer of 2006, and each summer thereafter, the parties shall divide summer time equally with the children beginning June 1, and ending at the time school starts with the children being in the mother's home one week prior to school.

After September 1, 2007, during the school year, the children shall be with their father in one week from Thursday at 4:00 p.m. to Friday at 4:00 p.m. and in alternate weeks from Thursday at 4:00 p.m. to Sunday at 4:00 p.m.

The children shall spend half of their Christmas and Spring breaks with each parent.

The parties followed that schedule for a period of time and then later agreed to change it so that during the school year the children would be with Troy from Wednesday evening through Friday at 5:00 p.m. one week and Friday evening through Sunday at 5:00 p.m. the next week. During the summer, the parties alternated full weeks with the children.

Troy filed a petition to modify the dissolution decree in August 2007, alleging there had been a material change in circumstances such that it was

now in the best interests of the minor children that [he] be awarded the full rights of joint physical care, that his shared parenting time be increased, and that he be awarded the rights and duties that a father with joint physical care should be afforded.

In the alternative, he requested that the children be placed in his physical care. Sarah filed a "counter petition" asking that the children instead be placed in her physical care.

Prior to the modification trial, Troy and Sarah brought their children to see Melissa Mee, a family therapist. They were concerned because Riley "was experiencing some anxiety" and they wanted "to have both of the girls assessed." Mee diagnosed Riley with an anxiety disorder

and counseled her for several months. She reported that Riley "would get upset, for instance, in school when she did not remember where she was to go after school. She couldn't remember on any given day." At the modification trial, Sarah similarly testified that Riley would "worry about which bus to ride, which night it was to go to which parent?s house." Troy testified he believed the parenting schedule should be changed to alternating weeks "year-round so it would be consistent all the time."

Following trial, the district court found the matter before it to be a request to modify the parenting schedule, not a request to modify custody. It entered a ruling modifying the parenting schedule, and in so doing, the court applied the lower burden of proof required to change the visitation provisions of a dissolution decree. *See In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct.App.2004) ("The burden to change a visitation provision in a decree is substantially less than to modify custody."). It determined "[i]n this case, there has been some change of circumstances on the part of the parties." The court found Sarah had been unwilling to provide any more contact with the children than the minimum ordered by the court, which was frustrating to Troy, and that Sarah had insisted most of the parenting time occurring in excess of the minimum be traded back to her. The court doubted that the trial court at the time of the original decree had contemplated this level of inflexibility. The court found the most important change was the "frustration and anxiety" experienced by Riley over the present parenting schedule. The court concluded

that there has been sufficient change of circumstances such that the best interests of the children require that the parenting plan be modified to provide that each child spend one week with each parent, with the children to change parental homes at 6 p.m. on Sundays.

Sarah appeals. She claims the court erred by treating this case as one for modification of visitation rather than modification of custody, and therefore applied the incorrect burden of proof. She additionally claims the evidence presented at trial did not support the court's modification, which she argues was based on perceived fairness to the parties rather than the best interests of the children.[1]

## II. Scope and Standards of Review.

■ Because an action to modify a dissolution decree is an equitable proceeding, *In re Marriage of McCurnin*, 681 N.W.2d 322, 327 (Iowa 2004), our review is de novo. *See* Iowa R. App. P. 6.4. We therefore give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.14(6)(*g*). This is because the trial court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

## III. Discussion.

### A. Custodial Arrangement.

■ On appeal, Sarah suggests the original decree established a "primary physical care" arrangement, and asserts Troy's request was to "change the decree from a primary physical arrangement to a joint physical care arrangement."[2] We disagree.

---

1. If there are any error preservation problems with the issues raised by Sarah on appeal, as Troy contends, we elect to bypass them and

proceed to affirm on the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

2. Sarah's arguments in this regard seem somewhat disingenuous given that she sought

■ The decree in this case expressly provides that the parties "shall share joint legal custody and joint physical care" of their children. A "Shared Parenting Time" schedule is then set forth in the decree. Although that schedule does not provide Troy with exactly equal residential time, joint physical care "does not require that the residential arrangements be determined with mathematical precision." *See In re Seay,* 746 N.W.2d 833, 836 (Iowa 2008); *see also In re Marriage of Hynick,* 727 N.W.2d 575, 579 (Iowa 2007) ("Joint physical care anticipates that parents will have equal, *or roughly equal,* residential time with the child." (emphasis added)). As contemplated in a joint physical care arrangement, Troy shares parenting time with Sarah, maintains a home for the children, and provides routine daily care for them. *See* Iowa Code § 598.1(4) (2007) (stating with joint physical care, "both parents have rights and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, [and] providing routine care for the child"). In addition, while Troy does pay Sarah child support, his obligation was calculated pursuant to the offset method used in joint physical care cases. *See* Iowa Ct. R. 9.14; *Seay,* 746 N.W.2d at 835.

■ To conclude that the decree did not place the parties' children in their joint physical care would require us to ignore the express language of the decree, which we may not do under our rules of interpretation. *See In re Marriage of Lawson,* 409 N.W.2d 181, 182 (Iowa 1987) (stating the determinative factor in interpreting a judgment or decree is the intent of the court as disclosed by the language of the decree as well as its content). Every word

should have force and effect, and be given a consistent, effective, and reasonable meaning. *Id.* at 182–83. We therefore conclude the district court correctly assessed the issue before it to be one of modifying a joint physical care parenting schedule. This brings us to the primary contention on appeal: whether the district court applied the correct burden of proof.

## B. *Burden of Proof.*

■ The custodial terms of a dissolution decree may be modified

> only when there has been a *substantial change in circumstances* since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child. The parent seeking to change the physical care from the primary custodial parent to the petitioning parent has a heavy burden and must show the ability to offer superior care.

*Malloy,* 687 N.W.2d at 113 (emphasis added) (internal citations omitted).

■ A different, less demanding burden applies when a parent is seeking to change a visitation provision in a dissolution decree. *See In re Marriage of Thielges,* 623 N.W.2d 232, 235 (Iowa Ct.App. 2000). That standard "follows the criteria used in actions to modify child custody, except a much less extensive change in circumstances is generally required in visitation cases." *In re Marriage of Salmon,* 519 N.W.2d 94, 96 (Iowa Ct.App.1994). A parent seeking to modify visitation must only establish "that there has been a *material change in circumstances* since the decree and that the requested change in

to terminate the joint physical care arrangement in her "counter petition" to Troy's peti-

tion to modify.

visitation is in the best interests of the children." *Id.* at 95–96 (emphasis added).

In order to determine which burden should apply here, we must decide whether a modification to a joint physical care parenting schedule is a change in custody, a change in visitation, or neither. The provisions of chapter 598 governing custody of children do not expressly answer this question. However, in *Hynick,* 727 N.W.2d at 579, our supreme court stated, "When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *See also In re Marriage of Hansen,* 733 N.W.2d 683, 691 (Iowa 2007) ("Visitation rights are ordinarily afforded a parent who is not the primary caretaker."). On the other hand, when joint physical care is warranted, "both parents are awarded physical care of the child." *Hynick,* 727 N.W.2d at 579. This means both parents have physical care rights and responsibilities toward the child, including the right to maintain a home for the child and "determine the myriad of details associated with routine living." *Hansen,* 733 N.W.2d at 691; *see also* Iowa Code § 598.1(4). "[N]either parent has physical care rights superior to those of the other parent" in such an arrangement. Iowa Code § 598.1(4).

 It therefore appears that when joint physical care is granted, each parent has something more than visitation during their residential time with the child. *See, e.g., Nauditt v. Haddock,* 882 So.2d 364, 367 (Ala.Civ.App.2003) ("[I]n a joint-physical-custody arrangement, each parent has something more than mere 'visitation' during their period of actual physical custody."). We believe, however, that a change in the parenting schedule in a joint physical care case is more akin to a change in visitation than a change in custody. *See id.* (reaching similar conclusion).

Our conclusion is supported by the reasons for the different burdens of proof in custodial modifications versus visitation modifications. The heavy burden upon a party seeking to modify custody stems from the principle that once custody has been fixed it should be disturbed for only the most cogent reasons. *In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983). "The importance of stability in [a child's] life ... cannot be overemphasized." *In re Marriage of Coulter,* 502 N.W.2d 168, 171 (Iowa Ct.App.1993); *see also Hansen,* 733 N.W.2d at 696 (discussing the importance of stability and continuity of caregiving in determining custodial arrangements); *Enrique M. v. Angelina V.,* 121 Cal.App.4th 1371, 18 Cal.Rptr.3d 306, 314 (Cal.Ct.App.2004) (stating the "changed circumstance rule" applicable to custodial modifications protects and promotes "stable custody arrangements,' which are believed to be in the best interest of the child").

"Unlike a change in custody, an alteration in a parenting or visitation schedule does not cause a disruption in 'established patterns of care and emotional bonds with the primary caretaker.' " *In re Marriage of Lucio,* 161 Cal.App.4th 1068, 74 Cal. Rptr.3d 803, 811 (Cal.Ct.App.2008) (citation omitted). In addition, "factors such as the physical location of a child during a particular weekend or holiday ... are more likely to require change over time than the status of the child's residential parent and legal custodian." *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 876 N.E.2d 546, 554 (Ohio 2007). It thus makes sense to apply a less demanding burden of proof to modifications of visitation, especially in light of the well-established principle that the best interests of children are ordinarily fostered by a continuing association with both parents. Iowa Code § 598.41(1)(a); *see also Salmon,* 519 N.W.2d at 96.

We think the reasoning for the lower standard of proof in visitation modifications is equally applicable to modifications of the shared parenting time in a joint physical care arrangement. Although both parents in this case initially sought to terminate joint physical care, the district court continued that custodial arrangement[3] and instead simply changed the parenting schedule due to the oldest child's anxiety over the mid-week change in homes. Because both parents already jointly participated in the routine daily care of the children, that modification did not cause a disruption in the established patterns of care or emotional bonds between the parents and the children. *See Fisher*, 876 N.E.2d at 554. The court's shift in the parties' parenting time with the children was thus not as drastic as a change in custody would have been. *See Thielges*, 623 N.W.2d at 236 (placing heavier burden on parent "seeking the most significant modification"—one that "would remove the parties' children from [their mother?s] physical care and place them in [the father's] physical care").

Our conclusion is further supported by other courts that have been confronted with the same issue and reached a similar conclusion. *See generally, Nauditt*, 882 So.2d at 367 (concluding that a change in the amount of time a parent with joint physical care will exercise his or her custodial rights "is more akin to a change in visitation rights than a change in custody," thus justifying a lower burden of proof); *Enrique M.*, 18 Cal.Rptr.3d at 314 (" '[W]hen the parents have joint physical [care], modification of the coparenting arrangements is not a change of custody requiring change of circumstances. Instead, the trial court has wide discretion to choose a parenting plan that is in the best interest of the child.' " (citation omitted)); *Russell v. Russell*, 210 S.W.3d 191, 197 (Mo.2007) ("Courts should not require a substantial' change from the circumstances of the original judgment where the modification sought is simply a rearrangement in a joint physical [care] schedule."); *Fisher*, 876 N.E.2d at 553 ("The [statutory] standard . . . for modification of a shared-parenting plan is lower because the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian.").

The cases cited by Sarah in support of her position are inapposite and not persuasive. *See, e.g., Zitnay v. Zitnay*, 90 Conn. App. 71, 875 A.2d 583, 588 (Conn.App.Ct. 2005) (requiring mother to show substantial change in circumstances to modify father's child support obligation in joint physical care case); *In re Marriage of Lawrence*, 327 Mont. 209, 112 P.3d 1036, 1038 (Mont.2005) (determining district court erred in failing to set forth findings of fact and conclusions of law in its modification of a joint physical care parenting plan); *Drury v. Tabares*, 97 Wash.App. 860, 987 P.2d 659, 660–61 (Wash.Ct.App. 1999) (reviewing trial court's modification of a sole physical care arrangement to joint physical care).

For the foregoing reasons, we conclude the district court properly utilized the lower burden of proof applicable in visitation modifications in modifying the parties' joint physical care parenting schedule.

### C. Change in Circumstances.

Next we must determine whether the district court's modification of the

---

**3.** Neither party has appealed the district court's denial of their requests to end the joint physical care arrangement.

shared parenting time was justified by a sufficient change in circumstances and in the best interests of the children. We conclude it was, based upon our de novo review of the record and recognition of "the reasonable discretion of the trial court to modify visitation rights." *Salmon*, 519 N.W.2d at 95.

The primary reason for the district court's decision to change the parties' parenting schedule was the frustration and anxiety experienced by Riley regarding the mid-week change in homes. Riley's family therapist, Melissa Mee, testified that Riley "would get upset, for instance, in school when she did not remember where she was to go after school. She couldn't remember on any given day." She stated there were "several times [Riley] became upset and cried at school because she couldn't remember where she was to go." Sarah confirmed that Riley's teachers had "talked about her worrying about which bus to ride, which night it was to go to which parent's house," although Sarah testified that she felt Riley had adapted to the schedule in the past year.

Mee recommended an alternating week schedule in order to provide the children with a predictable and consistent routine. She did not "anticipate any negative consequences" from such a change and in fact believed the alternating week schedule "would be the most healthy thing for [the children] at this time." Although Mee additionally testified that "Troy is a very good father, and there is no reason at this point for him to not be able to have the girls 50 percent of the time," we do not think, as Sarah argues, that the district court's modification was improperly based on "perceived fairness" to Troy rather than the best interests of the children. *See Hansen*, 733 N.W.2d at 695 ("Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but

primarily upon what is best for the *child*."). In fact, the court specifically stated "the best interests of the children require that the parenting plan be modified" in order to "provide the older child with a stable school week schedule [so that] she goes home to the same home she left for school in the morning." In addition, any such improper consideration would be obviated by our de novo review. *See Lessenger v. Lessenger*, 261 Iowa 1076, 1078, 156 N.W.2d 845, 846 (1968).

Like the district court, we find the anxiety Riley experienced with the midweek change in homes constitutes an important change in circumstances, but it is not the only change supporting modification here. We also note that in the two and one-half years since the parties' divorce, Troy has remarried, obtained his own home, and gained a more flexible work schedule, thereby enabling him to spend even more time with the children. When the parties divorced, Troy was employed as a truck driver for a Hy–Vee distribution center. His shift typically began at around midnight or 1:00 a.m. and ended the next day at 1:00 or 2:00 p.m. It was not uncommon for him to work a fifteen or sixteen hour day. By the time of the modification trial, such long hours had become atypical. Although Troy still began working at 1:00 a.m., he was usually done working by 10:00 a.m. the next morning, if not earlier. Troy's new work schedule has freed up time on the weekends for him to be with the children. When the parties divorced, Troy was living with his mother, then in her seventies. Troy could not rely on her to watch the children all the time. As Troy stated, "She's a grandma, not a mother." Troy has remarried and his wife is supportive of his relationship with his children and able to assist him in caring for them during his night shifts. We additionally find the modified parenting schedule is in the best interests of the children

as it provides them with a more regular and predictable schedule during the week and allows them maximum continuing contact with both parents. The record does not show that the court's decision on this issue failed to do equity. *See Salmon*, 519 N.W.2d at 95 (stating a district court's decision regarding modification of visitation rights will not be disturbed "unless the record fairly shows it has failed to do equity").

### IV. Conclusion.

We conclude the district court did not err in assessing the issue before it to be one of modifying a joint physical care parenting schedule. Nor did it err in applying the lower burden of proof used in visitation modifications in its modification of the joint physical care parenting schedule. We further conclude Troy established a sufficient change in circumstances existed requiring a modification to the parenting schedule and that such a modification was in the best interests of the children. The judgment of the district court is therefore affirmed.

**AFFIRMED.**