**IN THE COURT OF APPEALS OF IOWA**
No. 13-1660
Filed June 25, 2014

**IN RE THE MARRIAGE OF JASON DAVID ALBRECHT
AND AMANDA JANE ALBRECHT**

**Upon the Petition of
JASON DAVID ALBRECHT,**
        Petitioner-Appellee,

**And Concerning
AMANDA JANE ALBRECHT,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David F.

Staudt, Judge.


        Amanda Albrecht appeals the district court's denial of her application to

modify the dissolution decree and the award of child support to Jason Albrecht.

**AFFIRMED.**


        Craig Ament of Ament Law Firm, Waterloo, for appellant.

        John J. Wood and Kate B. Mitchell of Beecher, Field, Walker, Morris,

Hoffman & Johnson, P.C., Waterloo, for appellee.


        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

Amanda Albrecht appeals the district court's denial of her application to modify the dissolution decree and the award of child support to Jason Albrecht. Amanda contends the district court improperly employed the offset method to determine how much child support Amanda was ordered to pay Jason because, Amanda asserts, they do not have a joint physical care arrangement; rather, Amanda has primary physical care of the child. Amanda further argues that, due to her inability to find a job and home close to the child's school, the district court should have allowed the modification of the decree so the child can attend the Dunkerton School District where Amanda resides. Jason requests appellate attorney fees. We conclude the court properly found no material change in circumstances occurred warranting modification of the dissolution decree for the child to attend a different school. We further agree with the court's conclusion the parties have a joint care arrangement, and therefore it properly calculated child support using the offset method. We also award Jason $2000 in appellate attorney fees. Consequently, we affirm.

**I. Factual and Procedural Background**

Amanda and Jason were married November 1998, and on February 1, 2010, the marriage was dissolved. One minor female child was adopted during their marriage, born in 2004. Incorporated in the decree was the parties' stipulation. The relevant sections state:

> Joint Custody, Primary Care, and Visitation. The parties agree that they should both have joint legal custody and joint physical placement of the minor child.
> . . . .

Visitation Schedule. The parties have agreed as to reasonable visitation, said visitation shall be, at a minimum as follows:

1) During School Year Visitations: The Respondent shall have visitations with the parties' minor child each week beginning each Sunday at 5:00 p.m. to after school on Thursday. In the event that the minor child shall not have school or have an early dismissal that occurs on the Respondent's Thursday visitation, the Respondent shall have visitation with the minor child until 5:00 p.m. The Petitioner shall have visitations with the parties' minor child agreed as to reasonable visitation, each week from after school each Thursday through 5:00 p.m. on Sunday.

2) Summer Visitations: The Respondent shall have visitations with the parties' minor child each week beginning each Sunday at 5:00 p.m. through 5:00 p.m. on Thursday. The Petitioner shall have visitations with the parties' minor child each week from 5:00 p.m. on Thursday through 5:00 p.m. on Sunday.

3) Holiday Visitations: The Petitioner shall have visitations with the parties' minor child on each Easter from 3:00 p.m. to 9:00 p.m.; Labor Day Weekend from Thursday at 5:00 p.m. to the following Monday at 5:00 p.m.; Thanksgiving Day from 3:00 p.m., and Christmas Eve from 4:00 p.m. through Christmas Day at 10:00 a.m. The Respondent shall return the minor child to the Petitioner by 4:30 p.m. on Christmas Day through 11:00 a.m. on December 26th, unless said day is the Petitioner's regular scheduled visitation day. At which time, the regular visitation schedule shall apply. The Respondent shall have visitations with the parties' minor child on each Easter from 10:00 a.m. to 3:00 p.m.; Memorial Weekend from Friday at 5:00 p.m. to the following Thursday at 5:00 p.m. Christmas day at 10:00 a.m. to 4:30 p.m. The 4th of July, New Year's Eve and New Year's Day shall be spent with the party in which the regular visitation falls on.

. . . .

7) Any childcare expenses incurred during scheduled visitations shall be the sole responsibility of the individual parties.

. . . .

Child Support. The parties are each either employed or employable and can contribute to the support of the minor child. In consideration of the settlement, the parties agree that neither party shall pay child support to the other, now or in the future.

Education and Education Expenses.

a. The parties agree that the minor child shall continue her education with Sacred Heart, in Oelwein, Iowa through 6th grade. The minor child shall then continue her education with Oelwein Community Schools from the 7th grade through 12th grade. The Petitioner and Respondent agree to share equally any costs incurred on behalf of the minor child's education.

. . . .

    The parties agree that each parent must live within a twenty (20) mile radius of where the minor child is currently enrolled in school. If a parent is relocating the residence of the minor child to a location which is more than twenty (20) miles from where the minor child is enrolled in school, the Court may consider the relocation a substantial change in circumstances. If the Court determines that the relocation is a substantial change in circumstances, the Court shall modify the Dissolution Decree to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and her parents. The parties recognize the importance of maximizing contact between the minor child and her parents and maintaining the shared physical placement agreement for the benefit of the minor child.

The physical care arrangement results in the child being in Amanda's care approximately fifty-seven percent of the time and in Jason's care forty-three percent of the time.

At the time of the dissolution, Amanda was unemployed, and in November 2010, began receiving public assistance. As a result of Amanda receiving this assistance, the district court modified the child support obligation on November 30, 2010. It ordered Jason to pay $170 each month to the Collection Services Center and Amanda to pay $170 to the Buchanan County Clerk.

Amanda obtained a bachelor's degree in psychology from Kaplan University in June 2011. She was unable to find financially sufficient employment in the Oelwein, Iowa area, and secured a job in April 2012 at the United States Postal Service in Dunkerton. She works five days each week, with one day off on Sunday and one during the week, and she earns $38,955 each year. She purchased a house in Dunkerton, having been unable to find a suitable residence in the Oelwein area. Jason is a self-employed truck driver, and although his

income fluctuates, the court found his income to be $18,600.[1] He lives in Hazelton, Iowa.

The child has been enrolled in Sacred Heart Catholic School for the past four years. The parties agree she is happy and performing well academically. So that Amanda may arrive at work on time, Amanda and the child currently leave the house at 6:00 a.m. on the days Amanda is working and taking care of the child. Due to her work schedule, if the child continues at Sacred Heart, they will have to leave the house at 5:30 a.m. The drive from Dunkerton to Oelwein is approximately twenty-five minutes, resulting in Amanda driving two hours each day she works.

Given her commute, Amanda filed an application to modify the dissolution decree on August 14, 2012. She requested the court allow her to enroll the child in the Dunkerton Community School District, as well as establish child support pursuant to the child support guidelines. A hearing was held on July 16, 2013, and on August 16, the district court entered an order denying Amanda's request to modify the decree, finding no material change in circumstances occurred such that the decree should be modified to allow the child to change schools. It further ordered Amanda to pay Jason child support in the amount of $274 each month after finding the parties had a joint physical care arrangement, and using the offset method to calculate child support. Amanda appeals.

---

[1] In 2010, Jason's taxable income was $12,244; in 2011, it was $18,563; and in 2012, it was $13,673. At trial, Jason testified his lower earnings were a result of time he could not work due to injury, and that he expects to earn approximately $18,000 in the future.

**II. Standard of Review**

We review orders on an application to modify a dissolution decree de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We give weight to the fact findings of the trial court but are not bound by them. *Id.*

**III. Child Support**

Amanda argues the district court improperly concluded the parties share a joint care arrangement. She contends that, because she has more time with the child and is responsible for the day-to-day care, that she has primary physical care. Therefore, Jason should be responsible for paying child support, and the offset method should not have been employed.[2]

Pursuant to Iowa Code section 598.1(4) (2013), joint physical care is defined as:

> [A]n award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent.

Additionally, this arrangement "anticipates that parents will have equal, or roughly equal, residential time with the child." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). By contrast, "the parent with primary physical care has the responsibility to maintain a residence for the child and has the sole right to make decisions concerning the child's routine care." *Id.* When the custody

---

[2] Both parties concede that, due to Amanda's new employment, a substantial change in circumstances occurred warranting modification of the dissolution decree to include a child support obligation. *See* Iowa Code § 598.21C(2)(a) (2013).

arrangement is joint physical care, the appropriate method for calculating child support is the offset method. *In re Seay*, 746 N.W.2d 833, 835 (Iowa 2008).

Here, the custody arrangement stipulated to and incorporated into the 2010 decree does not specifically define itself as "joint physical care" but rather as "joint physical placement." However, the stipulation gives both parties "visitation" under a nearly equal schedule. While Amanda asserts she has the day-to-day care of the child and Jason is more of a "weekend-dad," the record supports the district court's finding the parties have a near equal amount of time with the child. While they each partake in different activities with the child, they both maintain the same rights and responsibilities reflected in their stipulated "joint physical placement" of the child. Therefore, it is clear the custody arrangement remains "joint physical care." *See Marriage of Hynick*, 727 N.W.2d at 579–80. Given this custody arrangement, the district court properly used the offset method when calculating child support. *Seay*, 746 N.W.2d at 835.

## IV. Modification of School Attendance

Amanda further asserts the district court improperly found no material change in circumstances occurred warranting a modification of the dissolution decree. She argues her inability to find suitable employment and housing in the Oelwein area constitutes a change in circumstances not contemplated at the time of the dissolution decree, and therefore the decree should be modified so as to allow her to enroll the child in the Dunkerton school, where Amanda now resides.

The parent seeking to modify the visitation provision of a dissolution decree must establish by a preponderance of the evidence that there has been a material change in circumstances since the decree and that the requested

change is in the best interests of the child. *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). This burden is much less extensive than the change that is necessary to modify custody provisions. *In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa Ct. App. 1985). Though Amanda requests a modification to the stipulation agreement regarding school placement rather than visitation, we believe this standard is nonetheless appropriate in determining whether the decree should be modified.

At the time of the dissolution decree, Amanda was unemployed and in the process of trying to find employment. While she anticipated being able to secure a job in Oelwein, it was not outside the contemplation of the decretal court that she could potentially be employed in a nearby area, such as Dunkerton. Moreover, as the district court noted, this job did not prevent her from obtaining housing in a place other than Dunkerton and closer to the child's school. We agree with the district court's finding the best interests of the child is to remain in the school to which the parties stipulated and that there was no material change in circumstances warranting modification of the dissolution decree. *Cf. In re Marriage of Deck*, 342 N.W.2d 892, 895–96 (Iowa Ct. App. 1983) (holding a move from Sioux City to Omaha due to employment constituted a material change in circumstances warranting modification). We therefore affirm the district court's denial of Amanda's application to modify the stipulation agreement so as to allow the child to attend a different school.

**V. Appellate Attorney Fees**

Jason contends we should award him appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within our discretion.

*In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994). In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal. *Id.* Because Amanda earns approximately twice Jason's income, and Jason was forced to defend the district court's decision, we award Jason $2000 in appellate attorney fees. Amanda's request for attorney fees is denied.

Costs of this appeal are assessed to Amanda.

**AFFIRMED.**