# IN THE COURT OF APPEALS OF IOWA

No. 21-0869
Filed March 30, 2022

IN RE THE MARRIAGE OF BRETT E. DIERCKS
AND RACHEL G. DIERCKS,

Upon the Petition of
BRETT E. DIERCKS,
        Petitioner-Appellant,

And Concerning
RACHEL G. DIERCKS, n/k/a RACHEL G. ULLRICH,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.


        Brett Diercks appeals the modification of the parties' parenting schedule.

**AFFIRMED**.


        Sarah Gorham of Stengel, Bailey & Robertson, P.C., Rock Island, Illinois,

for appellant.

        Lynne C. Jasper, Bettendorf, for appellee.


        Considered by Schumacher, P.J., Ahlers, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**AHLERS, Judge.**

At the time they divorced in 2011, Rachel[1] and Brett Diercks had two sons, born in 2007 and 2008. In their dissolution of marriage decree, they were granted joint legal custody and joint physical care[2] of the children. At the time, the father lived in Bettendorf and the mother began residing in Illinois, less than one hour from Bettendorf.

After the divorce, the mother moved to a different town in Illinois farther from Bettendorf, and the boys began residing primarily with the father. The mother's move prompted a 2015 modification to the divorce decree. The stipulated modification decree changed the mother's parenting time. The modified decree provided for the mother to have time with the children every other weekend, on a designated holiday/break schedule, and for two periods of three weeks each during the summer.

After a brief move to Wisconsin, the mother, her new husband, and their children moved to Florida in 2019.[3] They also maintain a summer home in northern Wisconsin. Despite the move reducing her opportunities for time with the children, the mother returned regularly to Iowa to exercise parenting time with the children. In 2020, the mother filed this action seeking modification of her parenting schedule.

---

[1] Rachel remarried after the parties divorced and is now known as Rachel Ullrich.

[2] The dissolution of marriage decree refers to the physical-care arrangement as "shared physical care," but we interpret it to mean "joint physical care," the terminology used in the Iowa Code for a shared parenting time arrangement under which neither parent has physical care rights superior to those of the other parent. *See* Iowa Code § 598.1(4) (2011) (defining "joint physical care").

[3] The mother and her new husband have two children together, and he has two children from a prior relationship. The two children at issue in this matter remain in Bettendorf with the father.

Following a trial, a ruling, and a ruling on post-ruling motions, the district court modified the mother's parenting time by reducing her weekend time to one weekend per month, leaving the holiday/break schedule largely intact, and increasing the mother's summer parenting time. The new summer schedule gave the mother a continuous period of time with the children starting one week after the children's school year concludes and ending two weeks before the next school year begins. The court also required use of a jointly-accessible Google calendar to help the parties communicate about the children's activities. The father appeals.

## I.      Issues Presented

The father raises four arguments: (1) the court erred by increasing the length of the mother's summer parenting time with the children; (2) the court erred by not requiring the mother to take the children to their activities during her time with the children; (3) the court erred by requiring the use of a Google calendar without providing sufficient guidance as to its use or impact on the parties; and (4) the court erred by precluding the father from calling multiple witnesses. We will address the challenges on the merits before addressing the challenge regarding exclusion of witnesses.

## II.     Change in the Parenting Schedule

### A.      Scope and Standard of Review

This is an action to modify a dissolution decree, so our review is de novo.[4] With de novo review, we give weight to the district court's fact findings, particularly concerning the credibility of witnesses, but we are not bound by them.[5] Typically,

---

[4] *See In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014).
[5] *Sisson*, 843 N.W.2d at 870.

we refer to the schedule the parents have with the children in a joint-physical-care arrangement as a parenting schedule, a parenting plan, or parenting time. In contrast, when one parent has physical care, we commonly refer to the other parent's schedule of time with the children as visitation or a visitation schedule. Here, despite the children residing primarily with the father, the parents continue to be classified as having joint physical care of the children, and neither party challenges that classification. Even though that remains the classification, both parties and the district court regularly refer to the mother's time with the children as visitation—a term that seems to be inconsistent with a joint-physical-care arrangement. In the end, any terminology inconsistency is inconsequential, as the standards that apply to modifying a parenting schedule in a joint-physical-care arrangement are the same that apply to modifying a visitation schedule in an arrangement in which the other parent has physical care.[6] The standard is that the parent seeking the modification must establish that there has been a material change in circumstances since the latest decree and that the requested change in the parenting schedule is in the best interests of the children.[7]

## B.    Analysis

At the heart of this dispute is the geographic distance between each parent's home and the impact the children's extracurricular activities have on the parenting schedule. The children, in sixth and eighth grade at the time of trial, are extraordinarily involved in their activities. While both children wrestle, wrestling is

---

[6] *See In re Marriage of Brown*, 778 N.W.2d 47, 51–53 (Iowa Ct. App. 2009) (applying the lower burden for modifying visitation to an action seeking to modify the parenting schedule for parents with joint physical care).
[7] *Brown*, 778 N.W.2d at 51–52.

the older child's passion. He participates in various styles of wrestling nearly year-round and is nationally ranked. As he approaches high school age, he is a varsity hopeful. Testimony was presented regarding the positive impact participation has had on him in gaining self-confidence, accountability, and an impressive work ethic. The younger child has also seen success in wrestling and is a champion go-kart racer. His activities also keep him solidly booked throughout the year.

Both parties testified to the requirements the father imposes when the mother comes to Iowa to visit the children. He attempts to control the scheduling of their homework, eating, sleeping, and extracurricular activities. The district court characterized these requirements as restrictions on the mother's parenting time.

### 1. The Mother's Summer Parenting Time

The parties agree that the mother's move to Florida is a material change in circumstances that would permit modification of the parenting schedule. As there is a material change in circumstance, the only remaining issue is whether the change in the mother's parenting time schedule is in the children's best interest.[8] Due to the fact-intensive nature of making decisions involving the children's best interests, prior cases are of little precedential value.[9]

To resolve this issue, we begin with the small picture and note that the change in the parenting schedule is not significant. Before this modification action, the mother received six weeks of parenting time in the summer. The district court's

---

[8] *See Brown*, 778 N.W.2d at 51–53 (holding that a parent seeking to modify a parenting schedule needs to show a material change in circumstances and that the requested change is in the children's best interests).

[9] *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983) ("Prior cases have little precedential value; we must base our decision primarily on the particular circumstances of the parties in this case.").

order modified the summer schedule to give the mother the period starting seven days after the last day of school in the spring and ending fourteen days before school resumes in the late summer. Depending on the schedule set by the children's school district, including the variable number of snow days that can extend the school year in the spring, this may result in little to no additional summer time for the mother. At most, it adds approximately two weeks to the mother's summer parenting time. We do not view this as the drastic change the father claims it to be, especially when we consider that the mother's time during the school year is reduced from every other weekend to one weekend per month. It is quite possible that after the modification the mother will end up with less parenting time than she had before. Even if there is a slight increase in parenting time, the tradeoff between less time during the school year and more time in the summer is a reasonable one given the distance between the parents' homes.

We turn next to the bigger picture, which involves addressing the tension between the mother's parenting time and the children's extracurricular activities. This involves weighing competing interests. On the one hand, the children and mother have a right to spend time with each other. Continuing and frequent contact with both parents is generally in the children's best interests, especially when, as here, there is a good relationship between the mother and the children.[10] Iowa Code section 598.41(1)(a) (2020) declares a policy that, in setting the parenting arrangements, courts are to "assure the child[ren] the opportunity for the maximum continuing physical and emotional contact with both parents . . . and which will

---

[10] *See In re Marriage of Greenspon*, No. 19-1382, 2020 WL 5650479, at *3 (Iowa Ct. App. Sept. 23, 2020).

encourage parents to share the rights and responsibilities of raising the child[ren] unless direct physical harm or significant emotional harm" is likely to result. There is no claim—and no evidence to support a claim—that the mother poses a risk to the children's welfare. The benefits to the children in having as much time as possible with their mother—as is reasonable under the circumstances—are a heavy consideration.

On the other hand, "the best-interests equation factors in more than just parental contact. It takes into account the experiences that children need to promote their own growth and development, independent of their parents."[11] Our court has recognized that a child approaching middle school years "will presumably be increasingly involved with school and friendship related activities."[12] The children's extracurricular activities take time that potentially interferes with the mother's parenting time, especially given her significant distance from the children's base in the Bettendorf area. This is what causes the friction here.

Faced with these competing interests, both of which are important, the district court struck a fair and reasonable balance between the two to resolve the tension. By reducing the number of visits during the school year, the district court reduced the number of disruptions that could result from any travel associated with the mother's parenting time. By increasing the amount of summer parenting time, the court provided an opportunity for the mother to spend additional quality time

---

[11] *Greenspon*, 2020 WL 5650479, at *3.
[12] *Greenspon*, 2020 WL 5650479, at *3 (quoting *In re Marriage of Hunt*, 476 N.W.2d 99, 103 (Iowa Ct. App. 1991)).

with the children to make up for some of the lost time during the school year. We agree with the court's resolution of this issue.

### 2. Activity and Calendar Requirements

The father challenges the district court's refusal to require the mother to take the children to their extracurricular activities during her parenting time. He also asks us to modify or eliminate that part of the district court's order regarding use of a Google calendar to plot the children's activities. We consider the two issues together, as they are intertwined.

Following our review, we agree with the district court's decision to deny the father's request to require the mother to take the children to all scheduled activities during her parenting time. While the children's activities are important, giving the father control over the mother's time with the children leaves room for abuse. The district court found, and we agree, that the father has already shown a tendency to use the children's schedule as a means of interfering with the mother's time with the children, thereby negatively affecting her time with the children. We trust the mother will make the children available for important events as necessary. If the mother unreasonably ignores the children's obligations associated with a reasonable amount of extracurricular activities, that is an issue that can be addressed in a future action. We will not speculate that such unreasonableness will take place, so we decline to unduly restrict the mother's parenting time now.

As a subset of that issue, the father also asks for clarification on the Google calendar requirement established by the district court. We decline to expand on the requirements as set by the district court. As ordered, the father is required to place the children's events and appointments on the calendar so that both parents

are aware of the children's commitments. As expressed by the district court, the purpose of the calendar requirement was to help the parents exchange information. The requirement was not designed to serve as a method for giving the father control over the mother's parenting time, or vice versa, and we decline to disturb it.

**III.   Exclusion of Witnesses**

This issue stems from the district court's refusal to allow the father to call seven witnesses. After having heard from the parents, it came to the district court's attention that the father intended to call a number of additional witnesses. The following exchange took place:

> COURT: It's the court's understanding that the [father] has a list of other witnesses that they wish to call. Are all of the witnesses relative to the children's extracurricular activities and the importance of these activities in their lives and their skill and abilities in those activities?
> FATHER'S COUNSEL: Yes.
> COURT: The court finds the testimony along these regards is superfluous, extraneous, and cumulative and will not allow the witnesses to be called as the issue of the children's excellence in their extracurricular activities has been established and accepted by the court. If the [father's counsel] wishes to make an offer of proof, she can at the close of the proceedings. Is there any other evidence that the [father] wishes to present?
> FATHER'S COUNSEL: No. I'll just ask to make the offers of proof.
> COURT: Very well.

After discussion of other matters, the judge left the courtroom and the father's attorney proceeded to make an offer of proof on the record summarizing what she believed the witnesses would have said if called to testify.

### A.    Standard of Review

The district court has broad discretion on trial-management issues, including limitations on time and the presentation of witnesses.[13]    Such discretionary rulings are presumptively correct and we disturb them "only upon a clear showing of abuse of discretion."[14]

### B.    Error Preservation

On our own motion, we raise and decide an issue of error preservation that limits the scope of our discussion on this issue.[15]  As noted in the above exchange between the court and the father's attorney, the father's attorney confirmed that the subject matter his desired witnesses would testify to would be the children's extracurricular activities, the importance of these activities in their lives, and their abilities in those activities.  With respect to that subject matter, the father preserved error.  However, that is the limit of the issue for which error is preserved.  In the offer of proof placed on the record after the judge left the courtroom, the father's attorney expanded on the subject matter that would be covered by the witnesses.  On appeal, the father seeks to have us consider the expanded scope of the excluded witnesses' anticipated testimony.  This we decline to do.

The father was given the opportunity to call additional witnesses to cover other topics, but he declined to do so.  Further, there is no indication in the record

---

[13] *In re Marriage of Vidal*, No. 09-1608, 2010 WL 3324939, at *4 (Iowa Ct. App. Aug. 25, 2010); *see also* Iowa R. Evid. 5.611(a)(2) (giving the trial court reasonable control over "the mode and order of examining witnesses and presenting evidence so as to . . . [a]void wasting time").

[14] *Vidal*, 2010 WL 3324939, at *4.

[15] *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) (permitting the appellate court to raise and decide error-preservation issues not raised by the parties).

that the expanded scope of the subject matter of the excluded witnesses' testimony as referenced in the offer of proof was brought to the district court's attention. Therefore, the district court was never given the opportunity to hear testimony about the additional topics. "The purpose of an offer of proof is to give the trial court a more adequate basis for its evidentiary ruling and to make a meaningful record for appellate review."[16] That purpose is defeated when, as here, the district court is given one basis for making its ruling and then, in the offer of proof, additional bases are given without alerting the court to those additional bases. Consistent with the purpose of the offer of proof, we limit our review to the topics that the father told the court would be covered in the witnesses' testimony.

## C. Analysis

The district court has the authority to set time limits and limit the number of witnesses at trial.[17] We find no abuse of the court's discretion in excluding the father's additional witnesses. Much of the testimony at trial centered on the children's involvement and success in their sports. In fact, no one disputes that evidence. Based on the offer of proof and the statements made to the court, the testimony of the additional witnesses would have simply reinforced uncontested evidence that was already in the record. We agree with the district court that the testimony would have been cumulative, and the court did not abuse its discretion in excluding it.

---

[16] *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 17 (Iowa 2019).

[17] *Vidal*, 2010 WL 3324939, at *5 (collecting cases from federal courts and other states that permit a trial court to set time limits and the number of witnesses).

**IV.      Conclusion**

Following our de novo review, we agree with the district court's decision to modify the parenting schedule and require the parties to exchange scheduling information via a shared calendar.  The court did not abuse its discretion in excluding witnesses who would have offered cumulative evidence.

**AFFIRMED.**