**IN THE COURT OF APPEALS OF IOWA**

No. 24-2043
Filed December 17, 2025

**IN RE THE MARRIAGE OF KATIE L. JOHNSON
AND MATTHEW W. JOHNSON**

**Upon the Petition of
KATIE L. JOHNSON,**
      Petitioner-Appellee,

**And Concerning
MATTHEW W. JOHNSON,**
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber, Judge.

Matt Johnson appeals the order modifying the decree dissolving his marriage to Katie Johnson. **AFFIRMED.**

John J. Hines of JSC Legal, P.L.C., Cedar Falls, for appellant.

Teresa A. Rastede of Klatt, Augustine & Rastede, P.C., Waterloo, for appellee.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

Matt Johnson appeals from the order modifying the child-custody provisions of the decree dissolving his marriage to Katie Johnson. He contends the decree should be modified to provide joint physical care for the parties' children. In the alternative, he contends the weekly visitation schedule should be modified to increase his weekly visits to include overnights or add a second night of visitation. Because the physical care and visitation set out in the modification order serve the children's best interests, we affirm and award Katie $1000 in appellate attorney fees.

## I. Background Facts and Proceedings.

Matt and Katie married in 2012 and divorced in 2016. The dissolution decree adopted the parties' stipulation for joint legal custody of their two children and placed the children in Katie's physical care. Under the stipulation, Matt also received overnight visits each Wednesday and alternating weekends.

In 2017 and 2018, Matt had mental-health and substance-use issues, which led to criminal charges.[1] In July 2018, the parties entered a joint stipulation to modify visitation. Under the modified decree, Matt was allowed supervised visits every Wednesday from 3 p.m. to 7:30 p.m. Matt agreed to strictly abide by a list of safety rules, and Katie was given discretion to suspend visits if she suspected Matt was under the influence of drugs or alcohol. The parties agreed that Matt's visits would remain supervised until he completed three requirements: (1) engage

---

[1] Matt pled guilty to third-degree burglary and assault causing bodily injury or mental illness. In May 2019, the district court sentenced Matt to five years in prison. Matt was released on parole in January 2020 and discharged from parole in 2021.

in regular mental-health counseling, (2) obtain a substance-use evaluation and follow all recommendations, and (3) participate in chemical testing every sixty days until three consecutive tests showed no drug use. The stipulation provides that Matt's completion of those requirements "shall be considered a substantial change in circumstances for the purposes of modifying an Order."[2]

In October 2023, Matt petitioned to modify the decree based on "successful rehabilitation of his substance-use issues, the successful management of his mental health and stable lifestyle he now enjoys." He alleged that in the past year, Katie had allowed him visitation "well beyond" what was provided in the modified decree, including overnight visits.[3] During court-ordered mediation, the parties agreed to a new visitation schedule in which Matt is allowed unsupervised visits from 3:30 p.m. to 8:00 p.m. each Wednesday plus alternating weekends.

Trial was held in August 2024, and the district court entered its ruling that November. It found there was a substantial change in circumstances since the 2018 modification but denied Matt's request for joint physical care based on past volatility in the parties' relationship. The court found the children's best interests are served in Katie's physical care based on the stability she offers and the children's need for consistency. The court modified the decree's visitation schedule to formally adopt the schedule reached at mediation. It declined Matt's

---

[2] Although Katie allowed Matt unsupervised visits and some overnight weekend visits after his release from prison, no evidence shows that he completed the requirements included in the 2018 stipulation to modify visitation.

[3] Katie counterclaimed to modify child support, and both parties asked the court to establish a schedule for claiming child tax credits. Neither issue is challenged on appeal.

request for weekly overnight visits, granting him three non-consecutive weeks of visitation during the summer instead.

## II. Scope of Review.

We review the court's ruling in a modification action de novo. *In re Marriage of Kisting*, 6 N.W.3d 326, 332 (Iowa Ct. App. 2024). "While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *Id.* (citation omitted).

## III. Physical Care.

Matt first contends that the physical-care provision of the parties' decree should be modified to place the children in their joint physical care. To modify the decree, Matt had to show a material and substantial change in circumstances since the decree was entered. *See id.* The district court found Matt met his burden by showing "that he is actively in recovery and has stabilized his life." Matt then had to show that joint physical care serves the children's best interests. *See, e.g.*, *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) ("Any consideration of joint physical care, however, must still be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child."); *In re Marriage of Maxwell*, No. 24-0893, 2025 WL 2538879, at *6 (Iowa Ct. App. Sep. 4, 2025) (stating that a parent seeking to modify physical care from placement with one parent to joint physical care must show a substantial change in circumstances and that joint physical care is in the child's best interests). Because the court found Matt failed to show joint physical care serves the children's best interests, we focus our analysis there.

The supreme court has listed four main factors to consider in determining whether granting joint physical care is appropriate when both parents are suitable caregivers. *See Hansen*, 733 N.W.2d at 696–99. The first factor is "stability and continuity of caregiving," as "past caretaking patterns" likely indicate "qualities such as parental abilities and emotional bonds." *Id.* at 696 (citation omitted). Because "the caregiving of parents in the post-divorce world should be in rough proportion to that which predated the dissolution," "joint physical care is most likely to be in the best interest of the child where both parents have historically contributed to physical care in roughly the same proportion." *Id.* at 697–98. The second factor "is the ability of [parents] to communicate and show mutual respect." *Id.* at 698. Third, we consider "the degree of conflict between parents." *Id.* The final factor, which is particularly important "when there is a turbulent past relationship, is the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 699.

The district court found that joint physical care is not appropriate here based on "a history of volatility in this relationship going back many years."

> [Katie] reported to medical personnel at the birth of N.A.J., she was scared of [Matt]. She testified that during the marriage, he would make threats to harm her, including one time when he threatened to murder her. He would make gestures to her which led to fear he would strike her. [Matt] has denied ever being physically violent to [Katie]. While these actions [Katie] described by [Matt] likely occurred when he had not addressed his substance-use and mental-health needs, they are the history of these parties. Due to the domestic abuse episodes in the marriage, it is not in the children's best interest to grant joint physical care.

The court also found that the "stability and continuity" factor favors Katie, who has acted as the children's primary caregiver consistently since birth. Although the

changes Matt has made since 2018 qualify as a substantial change in circumstances, the court found they do not warrant overturning the parties' original stipulation regarding physical care.

Following our de novo review of the record, we agree that joint physical care is not in the children's best interests. Katie has acted as the children's primary physical caregiver since birth. After the parties divorced, she continued as their caretaker during a period when Matt was largely absent from their lives. There are also concerns about the parties' ability to communicate and show mutual respect. Although communication may have improved following the change in the visitation schedule, text messages exchanged in the spring of 2024 show that tension persists. Those messages also show ongoing conflict over the children's activities, which Matt perceives as encroaching on what he calls "my parenting time." Finally, we agree with the district court that the parties' history weighs against awarding joint physical care. We therefore affirm the denial of Matt's request to modify the decree's physical-care provision.

**IV. Visitation.**

Next, we turn to Matt's request for more visitation. Although the court granted Matt's request to modify the visitation schedule by adopting the schedule the parties agreed on during mediation, it did not grant him weekly overnight visits on Wednesday or a second night of visitation each Monday.

The showing required to modify visitation is less demanding than required to modify physical care. *See In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009) (stating that visitation can be modified if there has been a material change in circumstances). Again, the district court found Matt met his burden of

showing circumstances have changed since the July 2018 decree was entered. The question then is whether the requested modification to the visitation schedule is in the children's best interests. *See id.*

The district court found the agreement the parties reached during mediation serves the children's best interests and modified the parties' decree to adopt that schedule. But the court declined Matt's request to increase the length of his midweek visitation to include overnight visits. While the parties' decree originally provided Matt overnight visits every Wednesday, we note that the children were not yet enrolled in school at the time. Now that the children attend school and "are accustomed to getting to school every morning from [Katie]'s house," the court was concerned that changing their established routine would negatively impact their academic performance.

Matt complains that nothing suggests that he cannot handle getting the children ready and taking them to school on Thursdays. But this is not an issue of means, as any capable caregiver should be able to do so. Rather, it concerns consistency and stability. The children have a routine of getting ready for school while in Katie's home, and it works well as shown by the children's school performance. Although Matt may benefit from having an additional overnight visit each week, we question whether sleeping at Matt's home each Wednesday would benefit the children and whether any benefit would offset the disruption to their routine.

In the alternative, Matt asks for an additional four hours of weekly visitation on another day of the week. He also asks that his summer visitation be increased to six weeks, which he would alternate with Katie throughout the summer. For the

same reasons that joint physical care is not appropriate, we decline to award Matt the visitation he requests. Instead, we affirm the visitation schedule set out in the modification order because it is in the children's best interests.

### V. Appellate Attorney Fees.

Finally, Katie requests that we award her $10,777.50 in appellate attorney fees. Whether to award attorney fees is a matter of discretion. *Kisting*, 6 N.W.3d at 338. Although we consider the merits of the appeal and whether the party was obliged to defend the district court's decision on appeal, our primary consideration is the parties' relative financial positions. *Id.*

Because Katie successfully defended the trial court's decision on appeal, we grant her request for appellate attorney fees. But the district court found her annual earnings are almost three times more than Matt's. Based on the factors stated above, we award her $1000 in appellate attorney fees.

**AFFIRMED.**