# IN THE COURT OF APPEALS OF IOWA

No. 22-1351
Filed August 30, 2023

IN RE THE MARRIAGE OF LINDSEY SUE ROUTT
AND FREDERICK MICHAEL ROUTT JR.

**Upon the Petition of**
**LINDSEY SUE ROUTT,**
        Petitioner-Appellee,

**And Concerning**
**FREDERICK MICHAEL ROUTT JR.,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Davis County, Myron L. Gookin,

Judge.


        A father appeals the physical care and visitation provisions in a dissolution

modification order. **AFFIRMED.**


        Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for

appellant.

        Carly M. Schomaker of Gaumer, Emanuel, Carpenter & Goldsmith, P.C.,

Ottumwa, for appellee.


        Considered by Bower, C.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

The district court denied Frederick "Ricky" Routt's request to modify the custody provision in the decree dissolving his marriage to Lindsey Routt. That ruling left physical care of their two children with Lindsey. But the court awarded Ricky "structured liberal visitation" with his son and daughter. Ricky appeals both the physical care and visitation provisions in the modified decree. Because the district court's ruling is in the best interests of the children, we affirm. We also award Lindsey attorney fees.

## I. Facts and Prior Proceedings

Ricky and Lindsey married in 2011 and have two children in common. They were living in New Mexico when they divorced in 2014. At that time, their daughter—L.R.—was five months old, and their son—A.R.—was not quite two years old. The New Mexico decree ordered shared physical care, but the parties did not follow that fifty-fifty schedule. Ricky moved to Ohio. And Lindsey moved with the children to Bloomfield. Given those distances, Lindsey sought to modify the decree in 2015. When Ricky did not appear for the modification hearing, the Iowa district court entered a default order placing physical care with Lindsey.[1] The order stated the Ricky would have visitation "at such times and places as agreed to by [the parties]" accounting for the physical distance between them.

Two years later, Lindsey successfully petitioned to have Ricky's parental rights terminated. But that order was vacated in 2020 when the pair reconciled.

---

[1] Ricky complains that Lindsey knew he lived in Ohio but published notice of her petition in the Bloomfield Democrat. Lindsey testified that she informed Ricky about the 2015 modification hearing by text message.

They lived together in Iowa from September 2018 until January 2020, when Lindsey moved out with the children. Their relationship has been contentious since. Lindsey testified to stalking behavior by Ricky. He also called the Department of Health and Human Services to allege that Lindsey was neglecting and abusing the children. Those investigations resulted in unfounded reports. Meanwhile, Lindsey filed a domestic violence petition against Ricky that was denied. Ricky also complained that Lindsey rarely allowed him visitation.

Acting on that complaint, Ricky petitioned to modify physical care of the children.[2] At the modification proceeding in June 2022, the district court heard from nine witnesses, including Lindsey; Ricky; and Lois Vroom, the appointed child and family reporter. That August, the court decided the children, then ages eight and ten, would remain in Lindsey's physical care. But the court did provide Ricky with more certain visitation:

> a. Every other weekend from Friday after school (or 3:30 p.m. when the children are not in school) to Sunday at 5:00 p.m. except in during summer school break the alternating weekend visitation shall extend to Monday at 9:00 a.m.
> b. Every Tuesday after school (or 3:30 p.m. when the children are not in school) until 8:00 p.m.
> c. Such other visitation that can be agreed upon by the parties.

On top of that schedule, the court allowed Ricky alternating holidays with the children, as well as three weeks of exclusive summer visitation.

---

[2] Ricky's petition, filed without counsel, sought "sole legal custody" of the children or "primary physical placement" with him. But the district court found that his evidence at trial, where he still represented himself, was "limited to his request that the court order joint/shared physical care of the children with equal parenting time."

Ricky now appeals the modification ruling, asking for joint physical custody of the children. Short of that change, he asks for expanded visitation.

## II. Scope and Standard of Review

Because Ricky's action to modify the decree was in equity, we review the ruling de novo. *See In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). Under that standard, we give weight to the district court's fact findings, especially on witness credibility, but they do not bind us. *Id.*

## III. Analysis

### A. Physical Care

As the party seeking modification, Ricky, had the burden to prove by a preponderance of the evidence that a substantial change in circumstances occurred after the decree was entered. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). That change must affect the children's welfare, not have been contemplated when the decree was issued, and be more or less permanent. *Id.* He also had to show that the parties were on equal footing in their ability to care for the children and that joint care was in the children's best interests. *See In re Marriage of Rigdon*, No. 22-1147, 2023 WL 4530133, at *3 (Iowa App. July 13, 2023).

The district court first decided that Ricky "failed to prove a more or less permanent, substantial and material change in circumstances related to the children's welfare" since the entry of the 2015 custody order. But the court added that, even assuming a change in circumstances, the record evidence did not justify switching the children to joint physical care. On appeal, Lindsey does not defend

the district court's decision on the first ground. Instead, she focuses on whether joint physical care was in the children's best interests. We do the same.

To decide whether joint physical care is in the children's best interests, we look to the four non-exclusive factors from *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). Those are: (1) the stability and continuity of caregiving; (2) the parents' ability to communicate and show mutual respect; (3) the level of conflict between the parents; and (4) how much they agree in their approach to daily matters of parenting.[3]

On the first *Hansen* factor, the district court emphasized that "Lindsey has unquestionably been the primary caretaker of these children all of their lives." On appeal, Ricky argues that it is unfair to rely on this approximation factor when Lindsey has been recalcitrant recently in allowing him visitation. Lindsey counters that even when they lived in the same home, Ricky "was frequently gone" and did not provide equal parenting. We agree with the district court that it would not be in the children's best interest to upend the stability they have enjoyed with Lindsey. Without a doubt, they have flourished in her physical care. And they have excelled in school while enjoying many activities such as sports, dance, and fishing. Any perceived unfairness to Ricky is not a sound basis to change the physical care arrangement.

The remaining three *Hansen* factors also weigh against moving to joint physical care. Vroom, the child and family reporter, noted that the parents did not communicate well—each blaming the other for their rocky relationship. Vroom

---

[3] We also consider the general custody factors in Iowa Code section 598.41(3) (2022) and in *In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974).

believed that joint physical care "would put the children in the middle" far more than their current situation. The record also shows little agreement between Lindsey and Ricky on their approach to everyday parenting matters.

Beyond the *Hansen* factors, Ricky argues that the court overlooked A.R.'s desire for a shared-care arrangement. Ten-year-old A.R. told Vroom that he would like "a 50/50 schedule" to compensate for the interactions he missed with Ricky during the past two years. True, courts must consider whether a custody arrangement is in accord with a child's wishes, considering the child's age and maturity. Iowa Code § 598.41(3)(f). In our de novo review, we find that the decree appropriately addresses A.R.'s wishes by providing Ricky with a more robust visitation schedule. While A.R. may be impatient to make up lost time with his father, we agree with the district court's acceptance of Vroom's recommendation to ease the children into more consistent contact with Ricky.

Like the district court, we find the children's best interests are served by remaining in Lindsey's physical care. This is especially so given the children will be participating in structured and predictable visitation with Ricky.

## B. Visitation

If he is not awarded joint physical care, Ricky asks for expanded visitation. He offers three suggestions: (1) extend his mid-week visit to an overnight; (2) change his summer session to four weeks; and (3) increase his holiday visits to twenty-four hours. He argues the current visitation schedule does not provide the children with "maximum continuing physical and emotional contact with both parents" as contemplated by Iowa Code section 598.41(1).

We disagree and decline to expand the already liberal visitation ordered by the district court. The record shows that the court's decision on visitation did equity. *See In re Marriage of Brown*, 778 N.W.2d 47, 55 (Iowa Ct. App. 2009). Indeed, in Vroom's conversations with L.R., the younger child expressed concerns about overnights and longer stays at her father's house. Considering those concerns, the modified decree offered opportunities for parenting time that were reasonable and served both children's best interests.

## C. Appellate Attorney Fees

In a modification action, we may grant the prevailing party's fee request. Iowa Code § 598.36; *In re Marriage of Erlandson*, 973 N.W.2d 601, 609 (Iowa Ct. App. 2022). In exercising our discretion, we consider the parties' relative abilities to pay, whether the party resisting modification was successful, and whether a party had to defend the court's decision on appeal. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).

In her appellee's brief, Lindsey seeks attorney fees for defending the district court's modification decision. She notes that Ricky's annual income exceeds hers by over $15,000. She also points out that he chose to represent himself in the district court—saving trial attorney fees. Her counsel filed an affidavit asking for $7,682.50. Ricky resists that request in his reply brief.

For the reasons listed by Lindsey, we find she is entitled to attorney fees in the amount requested. We also order Ricky to pay the costs of the appeal.

**AFFIRMED.**